**TAYLOR MADE GOLF CO., INC., Plaintiff,**

v.

**CARSTEN SPORTS, LTD. and John Does 1–25, Defendants.**

**Civ. No. 96–0126–B (JFS).**

United States District Court, S.D. California.

Oct. 29, 1997.

**660**

Robert Browne, Mark R. Galis, Altheimer & Gray, Chicago, IL, for Plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

BREWSTER, District Judge.

#### I. Case Type and Jurisdiction

Plaintiff Taylor Made Golf Co. moves for judgment by default against defendant Carsten Sports, Ltd., pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Defendant has never appeared in this action and has not filed an opposition to this motion. This court has jurisdiction based on 28 U.S.C. §§ 1331, 1338(a), and 1338(b). Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(d).

#### II. Background

Plaintiff manufactures golf clubs and golf apparel. Defendant manufactures and sells golf clubs in competition with Plaintiff that Plaintiff believes are "knock-offs" of its trademarked and patented clubs. Plaintiff seeks judgment by default against Carsten Sports, Ltd. for (1) false representation based on trade dress infringement and false advertising pursuant to 15 U.S.C. § 1125(a); (2) trademark infringement pursuant to 15 U.S.C. § 1114; (3) patent infringement pursuant to 35 U.S.C. § 271; (4) unfair competition under the laws of California; and (5) violation of the California Unfair Trade Practices Act, CAL BUS. & PROF.CODE § 17000, *et seq.* Plaintiff is a nationally known golf club manufacturer, and has several patents and trademarks registered with the U.S. Patent and Trademark Office including registrations for the "BURNER BUBBLE" line. The drivers associated with this line were created by Plaintiff with the goal of "distinctive design or appearance so that purchasers or the trade could easily identify Plaintiff's clubs." Complaint ¶ 12. Plaintiff has spent "substantial sums of money, time and effort to develop, advertise and promote its golf clubs identified by ... [the] Burner Bubble Trade Dress" through professional golfing events, television and print advertising. *Id.*

Plaintiff alleges that Defendant Carsten Sports, Ltd. is a foreign corporation residing in Taiwan with its principal place of business in Taiwan. Plaintiff also alleges that Defendant has advertised and sold colorable imitations of Plaintiff's Burner Bubble Trade Dress and that Defendant "has deliberately attempted to ride on the coattails of Plaintiff to capitalize on its well-known and distinctive Trademarks and Trade Dress." Complaint ¶ 31.

Plaintiff filed its first motion for default judgment on April 23, 1997. On June 16, 1997, the Court held that Plaintiff had demonstrated infringement of its trademark and patent and granted its request for injunctive relief. However, the Court denied, without prejudice, Plaintiff's plea for damages. The Court found that Plaintiff had provided no proof of actual damages, and that the alternative "relief from advertising" methodology offered by Plaintiff was too speculative to support an award of monetary damages. The Court also denied, without prejudice, Plaintiff's request for attorneys' fees because Plaintiff provided no documentation to demonstrate the reasonableness of such fees.

#### III. Discussion

##### A. Standard of Law

FED.R.CIV.P. 55(b)(2) governs applications to the Court for a judgment by default. Entry of judgment by default is committed to the court's discretion. *See Lau Ah Yew v. Dulles,* 236 F.2d 415 (9th Cir.1956). A defendant's default does not automatically

entitle plaintiff to judgment. *See Draper v. Coombs,* 792 F.2d 915 (9th Cir.1986). In assessing liability, the complaint's allegations are taken as true. *See Danning v. Lavine,* 572 F.2d 1386 (9th Cir.1978). In assessing damages, the court must review facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment by default. *See Pope v. United States,* 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944). When determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. *See Danning v. Lavine,* 572 F.2d 1386 (9th Cir.1978).

No judgment by default shall be entered against an infant or incompetent person unless represented by a general guardian. If the opposing party has appeared in the case, movant must provide three days written notice of the default judgment hearing. The court may conduct such inquiries as it deems necessary and proper to quantify any damages. *See* FED.R.CIV.P. 55(b)(2).

## B. Notice

Plaintiff filed this action on January 24, 1996. Defendant's general manager was served personally at Defendant's principal place of business in Taiwan on October 5, 1996. Plaintiff returned and filed proofs of executed service on November 27, 1996. Defendant failed to answer within twenty days or to make other appearances by way of motion or notice of appearance.

■ FED.R.CIV.P. 4(f)(2) allows a party to serve process by any internationally agreed means described in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents or by the manner prescribed by the law of the foreign country in an action of its courts of general jurisdiction if there is no internationally agreed method of service. Taiwan is not a party to the Hague Convention, but "Taiwan law expressly permits service upon a corporation by delivery to 'the manager concerned.'" *See Cosmetech Int'l v. Der Kwei Enter.,* 943 F.Supp. 311, 316 (S.D.N.Y.1996).

FED.R.CIV.P. 55(b)(2) requires that a defendant who has appeared in the case receive notice of the application for default judgment at least three days prior to the hearing. The Clerk entered a default against Defendant on March 12, 1997. Although Defendant has never appeared in this case, Plaintiff gave Defendant notice, in accordance with FED. R.CIV.P. 4(f)(2)(c)(ii), of the June 9, 1997 hearing on its first motion for judgment of default by sending the moving papers via international certified mail on April 23, 1997 to Defendant's principal place of business. Plaintiff repeated the procedure on August 19, 1997, for this second motion scheduled for hearing on October 20, 1997. Therefore, while not required by FED.R.CIV.P. 55(b)(2), Defendant has received notice of these motions for default judgment.

## C. Plaintiff's Remedies

### 1. Monetary Damages

■ Upon entry of default, factual allegations in the complaint relating to liability are automatically taken as true, but allegations regarding the amount of damages are not. *See Geddes v. United Financial Group,* 559 F.2d 557 (9th Cir.1977). A default judgment may be entered without a hearing on damages when the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983). If the court awards damages, the judgment may not be different in kind or exceed the amount prayed for in the demand for judgment. *See* Fed.R.Civ.P. 54(c). Additionally, the court may deny a default judgment if it deems such judgment to be inappropriate. *See Draper v. Coombs,* 792 F.2d 915 (9th Cir. 1986).

■ Trial courts have broad equitable discretion in determining proper compensation to holders of valid trademarks. *See Friend v. H.A. Friend & Co.,* 416 F.2d 526, 533 (9th Cir.1969). Trademark infringement plaintiffs may recover (1) defendant's profits; (2) damages sustained by the plaintiff; and (3) the costs of the action. *See* 15 U.S.C.A. § 1117(a). Because damages benefit only plaintiffs and not consumers at large, courts require a heightened level of proof of injury

to recover damages. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir.1997). "In a suit for damages under section 43(a) [of the Lanham Act] ... actual evidence of some injury *resulting from the deception* is an essential element of plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir.1989) (emphasis in the original). Furthermore, "if the record in the district court contains no evidence of actual damage or actual profit in dollars and cents, no monetary award may be made ... and the trademark owner must be content with injunctive relief." *Caesars World, Inc. v. Venus Lounge*, 520 F.2d 269, 274 (3rd Cir.1975). Because awards can only compensate actual injuries, they cannot be either speculative or punitive. Courts may award up to three times the actual damage suffered by the plaintiff for Lanham Act violations. However, as noted above, a default judgment cannot exceed the amount prayed for in the demand for judgment. FED.R.CIV.P. 54(c); *See also* 15 U.S.C. § 1117(a).

In its first motion for default judgment, Plaintiff employed a "relief from advertising" methodology to calculate damages. Plaintiff estimated that Defendant would have been required to spend a minimum of $366,120.00 in advertising had it not ridden the coattails of Plaintiff's reputation. Plaintiff next assumed that Defendant must have accrued in profits at least as much money as it would have spent advertising. The Court dismissed without prejudice the request for damages because Plaintiff failed to satisfy the required standard of proof. The Plaintiff was instructed that it could file a new motion for default judgment if it was supported by specific evidence of Plaintiff's harm or the profits made by Defendant.

Plaintiff has submitted a new motion for default judgment including $200,000 in damages. The damages are based entirely upon alleged profits of the Defendant, as no evidence of harm to the Plaintiff is presented.

Plaintiff's $200,000 claim is derived, through a series of estimations, from a Department of Commerce calculation that Taiwan exports $100 million worth of golf clubs each year. Plaintiff's attorney states in a supporting declaration that "based on my many years of experience in policing Taylor Made's trademarks ... and in dealing with the U.S. Customs Service, it is my belief that ... approximately 50% of all golf clubs and golf club components being imported into the United States from Taiwan infringe upon the rights of Taylor Made or the rights of other leading golf manufacturers."[1] Declaration of Mark R. Galis, pp. 1–2. Plaintiff next estimates that the $50 million worth of infringing goods impact each of the six largest producers equally.[2] The one-sixth share of $50 million is rounded down to $8 million; the $8 million is then divided amongst each of the ten Taiwanese entities known by Plaintiff to have infringed its rights for a total of $800,000 each. Finally, the Plaintiff suggests, as "a very conservative estimate," that defendant would have realized a 25% profit margin on its sales, for a profit of $200,000.

Clearly, this calculation relies on several assumptions that cannot be verified by the Court. Even if the Commerce Department's $100 million figure is accepted, no one really knows the dollar value of infringing imports. The alleged equal impact on the six major producers is a rough generalization not supported by any independent showing of Plaintiff's market position. Furthermore, we do not know if there are other importers of Taylor Made clones than the ten of which Plaintiff is aware, nor do we have any basis to know that these importers are each responsible for a 10% share of the impact. Finally, on perhaps the easiest count to establish, Plaintiff does not provide any support for its estimation of a 25% profit margin. On paper, it would not be difficult to expose numerous weaknesses or deficiencies in the reasoning and research of their esti-

---

1. The document does not specify how many years Mr. Galls has worked with or for Plaintiff. According to the billing information provided to establish attorney fees, he is a sixth-year associate.

2. Plaintiff claims that it and two other producers most likely suffer a greater percentage of the impact, but that, given its inability to state precise figures, it will settle for a conservative, equal claim.

mation of $200,000, and to deny their motion on the grounds that it fails to present actual evidence of Defendant's profits.

However, it is difficult to imagine how the Plaintiff could establish precise figures of Defendant's actual profits. It does not seem unreasonable to ask whether relaxed standards of proof should be available to trademark holders trying to establish the profits of defendants who refuse to respect the summons of a United States court or who are entirely uncooperative. A plaintiff in a district court case in Florida was faced with a similar problem of proving the profits of a defaulting defendant in a trademark infringement suit. The Court held that, "doubts about the actual assessment of damages will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably ascertainable value." *Nintendo v. Ketchum*, 830 F.Supp. 1443, 1445–1446, (M.D.Fla.1993) (cited with approval on other grounds in *Nintendo v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir.1994)). The court found that "[p]roof of actual damages or profits is not necessary, as 'it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.' Thus, the court may rely on circumstantial evidence of the extent of the defendant's wrongdoing to assess damages." *Id.* (quoting *Polo Fashions, Inc. v. Rabanne*, 661 F.Supp. 89, 97 (S.D.Fla.1986)).

Therefore, the Court finds that it may grant a damages award that is reasonable, even if imprecise. While perhaps not a product of its best efforts, Plaintiff's calculations are probably conservative and do not appear to be unreasonable under the circumstances. Furthermore, Plaintiff likely is seeking monetary damages because of a concern that "knock-off" companies often fail to observe injunctions, while they might be deterred by a fear that their products could be seized to satisfy a monetary judgment. While trademark infringement damages may not be punitive, a system in which willful, uncooperative defendants would be less likely than other violators to incur meaningful liability

would turn on its head Congress' objective of protecting U.S. trademarks.

Therefore, the Court GRANTS Plaintiff's motion for default judgment. Pursuant to 15 U.S.C. § 1117(a), the Court trebles the $200,-000 in estimated profits by the Defendant, and awards a judgment in the amount of $600,000.

### 2. Attorney Fees

The Lanham Act permits the court to award reasonable attorney fees in exceptional cases. *See* 15 U.S.C. § 1117(a). Although the statute does not define "exceptional," a trademark case may qualify for an award of attorney fees if "the infringement made is malicious, fraudulent, deliberate or willful." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir.1993). Additionally, a case may be considered "exceptional" where the defendant disregards the proceedings and does not appear. *See Lien v. Compusoft of Kalamazoo, Inc.*, 1991 WL 641575, at *5 (W.D.Mich.1991). The court in *Lien* reasoned "[defendant's] lack of cooperation and disrespect for the judicial process constitute exceptional circumstances warranting an award of attorney fees to plaintiff in the action." *Id.* Because the defendant has failed to appear, Plaintiff may request an award of reasonable attorney fees in this case.

In seeking attorney fees, the plaintiff must produce evidence proving that the "requested rates are in line with those prevailing in the community for similar service." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993). In *Intel*, the district court awarded attorney fees under the Lanham Act without making findings regarding the reasonableness of the hours expended nor the hourly rates. The Ninth Circuit subsequently vacated the award for want of sufficient evidence. *Id.* at 623.

In its earlier motion for default judgment, Plaintiff sought $10,000.00 in attorney fees. The Court denied the request because Plaintiff did not provide sufficient documentation to support a finding that the fee was reasonable. The Court held that in any further motion, Counsel should provide

(1) contemporaneous billing records, (2) counsel's hourly rate, and (3) evidence that this rate is reasonable for an attorney of his or her skill and experience. Plaintiff has submitted the billing records, totaling $7,910.00, of the four attorneys who worked on this case. It is represented that the hourly fees are reasonable market rates for Chicago, where Counsel's offices are located, and are somewhat below comparable rates in southern California. Most of the work was done by associates who billed $140–205/hour; two partners contributed 1.4 hours of work for a bill of $349.00.

Because this information satisfies the Court's request, the Court GRANTS Plaintiff's motion for an award of attorney fees in the amount of $7,910.00.

### IV. Conclusion

The Court GRANTS Plaintiff's motion for default judgment against Carsten Sports Ltd. and awards $600,000 in monetary damages and $7,910 for attorney fees.

IT IS SO ORDERED.