**DISCOVERY COMMUNICATIONS, INC., a Delaware corporation Plaintiffs,**

v.

**ANIMAL PLANET, INC., a California corporation, and Isabella Strashnoy, an individual Defendants.**

**No. CV01–1660.**

United States District Court, C.D. California.

Sept. 17, 2001.

Bryan A. Merryman, Matthew P. Lewis, White & Case, Los Angeles, Robert L. Raskopf, Christopher J. Glancy, Gerard N. Saggese, III, Christopher J. Clancy, White & Case, New York City, for Discovery Communications Inc., a Delaware corporation, plaintiffs.

Jeffrey T. Bolson, Hahn & Bolson, Los Angeles, for Animal Planet Inc, a California Corporation, Isabella Strashnoy, an individual, defendants.

ORDER **GRANTING** PLAINTIFF DISCOVERY COMMUNICATIONS, INC.'S APPLICATION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS ANIMAL PLANET, INC. AND ISABELLA STRASHNOY

TEVRIZIAN, District Judge.

## I. *Background*

### A. Introduction

Plaintiff Discovery Communications, Inc. ("Plaintiff") brings this action for injunctive relief against defendants Animal Planet, Inc. and Isabella Strashnoy, (collectively, "Defendants").

Specifically, Plaintiff alleges the following causes of action in the Complaint:

(1) First Cause of Action for Violations of the Lanham Act (Federal Trademark Infringement)

(2) Second Cause of Action for Violations of the Lanham Act (Federal Unfair Competition)

(3) Third Cause of Action for Violation of the Lanham Act (Federal Dilution)

(4) Fourth Cause of Action for Violation of the California Business and Professional Code (Statutory Unfair Competition)

(5) Fifth Cause of Action for Violation of the California Business and Professional Code (California Anti–Dilution Statute)

The current Motion before the Court is the Motion for Default Judgment and Permanent Injunction brought by Plaintiff.

**B. Facts**

The following facts are set forth in Plaintiff's Complaint: Plaintiff DCI is a privately held corporation organized and existing under the laws of the State of Delaware, with its principle place of business in Bethesda, Maryland. Complaint, ¶ 7.

Plaintiff is informed and believes, and based thereon alleges, that Defendant Animal Planet, Inc. is an entity doing business in the state of California at 1012 S. Robertson Boulevard, Los Angeles, CA 90035. *Id.* at ¶ 8.

Plaintiff is informed and believes, and based thereon alleges, that Defendant Isabella Strashnoy is an individual who resides in the State of California. *Id.* at ¶ 9. Plaintiff is further informed and believes, and based thereon alleges, that Strashnoy is the owner of Defendant Animal Planet, which is a proprietorship operating in the State of California, with its principle place of business in this Judicial District. *Id.* at ¶ 9.

Plaintiff is an educational and entertainment company that provides television programing and related goods and services. Plaintiff owns and operates three distinct business units: Discovery Networks, U.S. that provides television services including the cable television channels Discovery Channel, The Learning Channel and Animal Planet; Discovery Channel Retail; and Discovery.com, Inc., which is responsible for the company's media and online efforts. *Id.* at ¶ 11.

Plaintiff has invested significant amounts of capital and devoted substantial amounts time and effort into production, marketing and development to establish and bring to market a wide variety of educational and entertainment goods and services. *Id.* at ¶ 12.

One service offered by Plaintiff is its "Animal Planet" cable television channel, which was launched in June 1996. *Id.* at ¶ 13.

Plaintiff uses the Animal Planet trademark in connection with educational and entertainment services offered via television and the Internet, toys, games, CD Roms, videos, books, magazines and clothing. *Id.* at ¶ 14.

Plaintiff owns the following federal trademark registrations: Reg. No. 2,093,-741 for ANIMAL PLANET as a service mark in Classes 38 and 41; Reg. No. 2,304,918 for ANIMAL PLANET & DESIGN as a service mark in Classes 38 and 41; Reg. No. 2,306,657 for ANIMAL PLANET & DESIGN as a service mark in class 38 and 41; Reg. No. 2,231,251 for ANIMAL PLANET as a trademark in Class 9; and Reg. No. 2,175,251 for ANIMAL PLANET as a trademark in Class 16. *Id.* at ¶ 15.

Plaintiff also owns an application for the trademark ANIMAL PLANET, for which a Notice of Allowance was issued on June 13, 2000, in the USPTO in Class 18, for use with pet leashes and collars, and in Class 28 for use with pet toys, Serial No. $^{75}/_{783}$,719. *Id.* at ¶ 16.

Defendants, similar to the public at large, are well aware of the value and reputation represented and symbolized by Plaintiff's ANIMAL PLANET trademarks and service marks. Plaintiff further alleg-

es Defendants have been long aware that Plaintiff's use of ANIMAL PLANET is recognized and relied upon by the international public, including California and in this judicial district, as identifying Plaintiff's goods and services from the goods and services of others. *Id.* at ¶ 18.

Defendants, without Plaintiff's consent, adopted Plaintiff's ANIMAL PLANET mark as their trade name for use in connection with its pet store, located within this judicial district at 1012 S. Robertson Boulevard, Los Angeles, California, 90035. *Id.* at ¶ 19.

Defendants displayed the ANIMAL PLANET mark on a vinyl banner above its store front and refer to their store as ANIMAL PLANET on their business cards. Defendants promote, offer for sale and sell pets, pet supplies and accessories at their ANIMAL PLANET-branded store. *Id.* at ¶ 20.

On June 23, 2000, Plaintiff's attorneys sent Defendants a letter notifying Defendants of their [alleged] improper use and unauthorized use of Plaintiff's ANIMAL PLANET mark and requested Defendants cease and desist such use. *Id.* at ¶ 21.

On July 13, 2000, Defendants, through their attorney, represented to Plaintiff that Defendants would comply with Plaintiff's demand and change the name of the store. *Id.* at ¶ 22.

Notwithstanding the assurances of Defendant to cease their use of the ANIMAL PLANET trademark, Defendants continued to use the mark. In addition, Defendant replaced the vinyl banner above their store front with a permanent sign and have advertised their ANIMAL PLANET branded pet store in local newspapers. *Id.* at ¶ 23.

On November 8, 2000 Plaintiffs sent Defendants a further letter demanding written confirmation that Defendant would cease all use of ANIMAL PLANET, including but not limited to removing the mark from all signs, awnings, business cards, stationary, advertisements and promotional material. *Id.* at ¶ 24.

In a telephone conversation on November 30, attorney for the Defendants represented that Defendants would cease all use of the ANIMAL PLANET trademark by January 1, 2001. In a telephone conversation on December 27, 2000, Defendants' counsel represented to Plaintiff's attorneys that he would remind Defendants that all use of ANIMAL PLANET must cease by January 1, 2001. *Id.* at ¶ 25.

Despite the repeated assurances by their counsel that Defendants would cease [using] the ANIMAL PLANET trademark, Defendants continued to use Plaintiff's ANIMAL PLANET trademark in the same manner and to the same extent. *Id.* at ¶ 26.

## C. Procedural Summary

On February 21, 2001, Plaintiffs filed a Complaint for Injunctive Relief for: (1) Federal Trademark Infringement; (2) Federal Unfair Competition; (3) Federal Dilution; (4) California Statutory Unfair Competition; and (5) Violation of California's Anti–Dilution Statute.

On June 26, 2001, Plaintiff filed the Declaration of Isaac Villarreal Re Service of Process upon Defendants and Proof of Service, and Summons and Complaint Upon Animal Plant and Strashnoy.

On June 29, 2001, Plaintiff filed an Application to Enter Default against Defendants ANIMAL PLANET and STRASHNOY along with the Declaration of Gerard N. Saggese III in support of Request to Enter Default against Defendants ANIMAL PLANET and STRASHNOY. The Clerk of the U.S. District Court entered the Default against Defendants ANIMAL PLANET and STRASHNOY on that day.

On August 13, 2001, Plaintiffs filed an Application for Default Judgment and a Memorandum of Points and Authorities in Support of Application for Default Judgment against Defendants ANIMAL PLANET and STRASHNOY along with the Declarations of Matthew P. Lewis, Gerard N. Saggese III and Leanne S. Macel in Support of Application for Default Judgment. That Application is presently before the Court.

## II. *Discussion*

### A. Standard

■ Rule 55(b)(2) of the Federal Rules of Civil Procedure requires the plaintiff to apply to a court for a default judgment in all cases where the requirements for a clerk-entered default judgment cannot be met. *See* Fed.R.Civ.P. 55(b)(2). An Applicant must apply to a court for a default judgment where (1) the claim is for an amount that is not certain or capable of being made certain by computation, (2) the defendant, although in default, has appeared in the action, (3) the defendant is a minor or incompetent, or (4) the defendant is in military service or is the United States. *See* Fed.R.Civ.P. 55(b)(2).

■ Pursuant to Rule 14.12 of the Local Rules of the Central District of California, the application for a default judgment shall include the following: (1) when and against what party the default was entered, (2) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative, (3) that the Soldiers and Sailors Relief Act of 1990 does not apply, and (4) that notice has been served upon the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). *See* Local Rule 14.12.

■ The power to grant or deny relief upon an application for default judgment is within this Court's discretion. Courts are instructed to consider the following factors when determining whether to grant default judgment: (1) the substantive merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of dispute as to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *See Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986).

### B. Analysis

1. *Plaintiff Is Entitled To Default Judgment And A Grant Of Permanent Injunction Against Defendants Animal Planet and Isabella Strashnoy.*

■ After considering the factors set forth above, this Court, in its discretion, finds that Plaintiffs are entitled to default judgment against Defendants.

First, after making the following findings, this Court concludes that a default judgment against Defendants is proper:

(1) Strashnoy, an individual, was personally served with the Summons and Complaint on February 24, 2001;

(2) Animal Planet, a proprietorship, was personally served with the Summons and Complaint on February 22, 2001;

(3) Defendants have failed to plead or otherwise defend this action;

(4) Default was entered against Defendants on June 29, 2001;

(5) Plaintiff declares Defendants never appeared in this action, therefore notice of the application for default judgment is not required by Federal Rule of Civil Procedure 55(b)(2). Plaintiff states however, it will provide notice of this application to Defendants.

(6) Defendants are not minors or incompetent persons; and

(7) The Soldiers and Sailors Relief Act of 1990 does not apply to Defendants.

Further, for purposes of a default judgment, the well-plead allegations of the complaint are take as true. *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 918 (9th Cir.1987). Therefore, after reviewing the allegations in the Complaint, set forth below, this Court finds that Defendants are liable to Plaintiff.

### (A) Plaintiff's Claims Are Sufficiently Pled To Establish A Prima Facia Case Of Trademark Infringement And Dilution

The Ninth Circuit has suggested that the first two *Eitel* factor—involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint—"require that plaintiff's allegations state a claim on which they may recover." *Kloepping v. Fireman's Fund,* No. C–94–2684, 1996 WL 75314, at *2 (N.D.Cal. Feb.13, 1996) (quoting *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978)); *Board of Trustees of the Sheet Metal Workers v. Sawyer,* No. C–99–3225, 2000 WL 1006522, at *1 (N.D.Cal. July 13, 2000) (finding plaintiff's complaint alleged prima facia elements and plainly stated basis of plaintiff's action). This Court agrees that Plaintiff's Complaint provides a substantial basis for this Court to grant default judgment in favor of Plaintiff and a permanent injunction enjoining Defendants.

### (1) Defendants' Use Of Their "Animal Planet" Designation Is Likely To Cause Confusion With Plaintiff's ANIMAL PLANET Mark.

■ To succeed on its claim for trademark infringement and unfair competition, a plaintiff must establish: (1) ownership of the trademark at issue; (2) use by defendant, without authorization, of a copy, reproduction, counterfeit or colorable imitation of the moving party's mark in connection with the sale, distribution or advertising of goods and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. *See e.g., Toho Co. v. William Morrow Co.,* 33 F.Supp.2d 1206, 1210 (C.D.Cal.1998).

### (a) Plaintiff Is The Owner Of The Animal Planet Trademark

■ Trademark registrations are prima facia evidence of ownership and exclusive right to use a mark in commerce, without restriction or limitation, on the products and services specified in the registration. *See* 15 U.S.C. §§ 1057(b), 1115(a); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1047 (9th Cir.1999). Plaintiff owns five federal trademark registrations for its ANIMAL PLANET mark. Plaintiff is therefore the exclusive owner of the ANIMAL PLANET mark for the various animal related entertainment and educational products and services stated in these registrations.

### (b) Defendants Used Plaintiff's ANIMAL PLANET Mark In Connection With The Sale of Pets And Pet Products Without Plaintiff's Consent

Defendants adopted Plaintiff's ANIMAL PLANET mark as the name of their pet store. Defendants displayed Plaintiff's ANIMAL PLANET mark on a vinyl banner and later on a permanent sign above its store front, and Defendants refer to their store as "Animal Planet" on their business cards and have advertised their store in newspapers and other publications. Defendants promote, offer for sale and sell pets, pet supplies and pet accessories at their "Animal Planet" branded

store without Plaintiff's consent and in the face of Plaintiff's objections.

### (c) Consumers Are Likely To Be Confused By Defendants' Uses of Plaintiff's ANIMAL PLANET Mark

■ The Ninth Circuit reviews eight factors when considering a likelihood of confusion: (1) strength of the mark; (2) proximity or relatedness off the goods; (3) similarity of the marks in sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979); *Dr. Seuss Enters., L.P. v. Penguin Books,* 109 F.3d 1394, 1404 (9th Cir.1997).

### (i) Plaintiff's ANIMAL PLANET Mark Is Distinctive, Strong And Famous

■ Marks may be strengthened by extensive advertising, length of time in business, public recognition and uniqueness. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1179 (9th Cir. 1988). Since June 1996, Plaintiff has invested significant amounts of capital in extensively advertising its renowned ANIMAL PLANET brand. Plaintiff also uses its ANIMAL PLANET mark in connection with a wide array of products and services.

Due to such efforts, and the high quality of Plaintiff's programming, the ANIMAL PLANET mark enjoys a high degree of consumer recognition. The ANIMAL PLANET cable television channel today reaches over seventy million households in the United States. As a result of widespread use and consumer recognition for many years, Plaintiff's ANIMAL PLANET mark has become famous as a unique identifier of Plaintiff's products and services.

### (ii) The Marks The Same

"The similarity of the marks will always be an important factor" and "the more similar the marks in terms of appearance, sound and meaning, the greater likelihood of confusion." *Brookfield Communications,* 174 F.3d at 1054. This factor weighs for Plaintiff as the marks are identical. *See Toho,* 33 F.Supp.2d at 1214.

### (iii) The Parties' Products And Services Are Similar And Closely Related

The consuming public is likely to associate Defendants' pet-related products and services with Plaintiff's products and services of the same nature. Moreover, the parties' services overlap. Plaintiff provides animal-related products and services, such as instructional information, books and videos on pet care and pet breeding on its <animalplanet.com> website, the same type of products commonly sold at pet stores. Because Defendants use the identical mark on similar and closely related products and services, the "likelihood of confusion would follow as a matter of course." *Brookfield Communications,* 174 F.3d at 1056.

### (iv) Actual Confusion Is Not Required

■ The Ninth Circuit does not require actual confusion for finding a likelihood of confusion under the Lanham Act. *See, e.g., Academy of Motion Picture Arts & Sciences,* 944 F.2d at 1456; *Sleekcraft Boats,* 599 F.2d at 353. This Court has held that because of the difficulty garnering such evidence, the failure to prove instances of actual confusion is not dispositive. *Watts Health Systems, Inc. v. United Healthcare Corp.,* 960 F.Supp. 1431, 1433 (C.D.Cal.1996)

Here, the issue of actual confusion would be especially difficult to garner because the issue has yet to be joined and no discovery has been conducted.

### (v) The Marketing Channels Overlap

Defendants advertise their "Animal Planet" branded store in newspapers and other publications. The extensive reach of Plaintiff's marketing channels include similar print related publications and therefore create an overlap. Moreover, because Defendants' and Plaintiff's products and services overlap, it follows that marketing channels are also the same.

### (vi) Consumers Are Less Careful

When dealing with inexpensive products, consumers are likely to exercise less care, thus making confusion more likely. *See e.g., Brookfield Communications,* 174 F.3d at 1060; *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1293 (9th Cir. 1992). Plaintiff and Defendants both offer inexpensive goods, pet related products and services, with which consumers are likely to exercise less care in distinguishing their sources. As such, confusion is more likely and this factor weighs in Plaintiff's favor.

### (vii) Defendants Acted Willfully And In Bad Faith

Defendants were on constructive notice of Plaintiff's rights to the ANIMAL PLANET mark, due to Plaintiff's federal trademark registrations. 15 U.S.C. § 1072.

Moreover, Plaintiff provided Defendants of actual notice of Plaintiff's rights to the ANIMAL PLANET mark by notifying Defendants of their improper and unauthorized use of such mark. Notwithstanding the assurances that they would cease use of Plaintiff's ANIMAL PLANET mark, Defendants continued and increased their use of the mark, thereby further evidencing their willful intent to infringe on Plaintiff's mark. Thus, in light of the above, this Court finds that Defendants are liable for trademark infringement, thereby entitling Plaintiff to a permanent injunction.

### (2) Defendants' Use Of Its "Animal Planet" Designation Will Dilute Plaintiff's ANIMAL PLANET mark.

 To prove dilution,[1] a plaintiff must show that (1) the mark is famous; (2) the defendant is making commercial use of the mark; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *See Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir.1998); *Films of Distinction, Inc. v. Allegro Film Prods., Inc.,* 12 F.Supp.2d 1068, 1078 (C.D.Cal.1998)

### (a) Plaintiff's Mark Is Famous

 Courts are instructed to consider the following eight non-exclusive factors in determining whether a mark is famous:

(1) the degree of inherent or acquired distinctiveness of the mark;

(2) the duration and extent of use of the mark in connection with the goods and services with which the mark is used;

(3) the duration and extent of advertising and publicity of the mark;

(4) the geographic extent of the trading area in which the mark is used;

(5) the channels of trade for the goods or services with which the mark is used;

(6) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

---

1. Trademark dilution claims under California law are "subject to the same analysis as federal claims." *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir.1998)

(7) the nature and extent of use of the same or similar marks by third parties; and

(8) whether the mark is registered.

Plaintiff is the owner of five valid and subsisting federally registrations for the ANIMAL PLANET mark, that carry a presumption of ownership, validity and exclusive right to use. Moreover, ANIMAL PLANET is a strong and distinctive mark that has acquired further distinctiveness through Plaintiff's extensive use with a variety of products and services since 1996. Plaintiff has created a global reputation for its goods and services and advertise its ANIMAL PLANET cable channel and products extensively in magazines, newspapers on billboards and on its <animal-planet.com> website. Plaintiff's mark has acquired substantial goodwill and is an extremely valuable commercial asset. The channels of trade used by Plaintiff are worldwide and overlap and include television and the Internet. Plaintiff's ANIMAL PLANET television channel reaches over seventy million households in the United States alone. As a result of such widespread use and consumer recognition, the ANIMAL PLANET mark is famous.

### (b) Defendants Are Making Commercial Use Of Plaintiff's ANIMAL PLANET Mark

Defendants adopted Plaintiff's ANIMAL PLANET mark as their trade name for use in connection with their pet store.

### (c) Defendants' Commercial Use Of Plaintiff's ANIMAL PLANET Mark Began After The Mark Became Famous.

Plaintiff launched its ANIMAL PLANET cable television channel in June, 1996. Defendants opened their "Animal Plant" pet store sometime in March of 2000, after Plaintiff's ANIMAL PLANET mark became famous.

### (d) Defendants' Use Dilutes Plaintiff's Famous Mark

Defendants' commercial use of Plaintiff's ANIMAL PLANET mark is likely to blur and tarnish such mark, thereby diluting its distinctive quality. Defendants are commercially using Plaintiff's ANIMAL PLANET mark to identify their goods and services, creating the possibility that such mark will lose its ability to serve as Plaintiff's unique identifier of its products and services.

Based on the allegations in the Complaint and the supporting affidavits submitted with Plaintiff's motion papers, Defendants' use of its "Animal Planet" designation will dilute Plaintiff's ANIMAL PLANET mark thereby entitling Plaintiff to a permanent junction enjoining such use. *See* 15 U.S.C. § 1125(c).

### 2. *Defendants' Infringement And Nonappearance Create Exceptional Circumstances Entitling Plaintiff To An Award Of Attorney's Fees.*

█ Plaintiff does not seek monetary damages from Defendants. Plaintiff does, however seek attorney fees and costs in the amount of $31,702.86 from Defendants to recoup the costs in connection with this lawsuit. Attorney fees are proper when a court grants default judgment. *See, e.g., PepsiCo v. Triunfo-Mex, Inc.,* 189 F.R.D. 431, 432–33 (C.D.Cal.1999). In a trademark context, the Lanham Act permits this Court to award attorney fees in "exceptional cases." 15 U.S.C. § 1117(a). A case is exceptional if the defendant has acted in bad faith or with willful and deliberate conduct. *See, e.g., Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1176 (C.D.Cal. 1986) (awarding attorney fees for willful and deliberate infringement); *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F.Supp. 472, 474–76 (N.D.Cal.1992)

(awarding attorney fees to plaintiff after defendant repeatedly ignored warning to refrain from use of mark).

Here Defendants chose to use Plaintiff's mark even though they had constructive, and later actual, notice of Plaintiff's rights thereto. This Court agrees with Plaintiff that such intentional and deliberate actions constitute willful infringement and dilution by Defendants, thus, an award of attorney fees is proper.

Additionally, a case may be considered exceptional where the defendants disregard the proceedings and do not appear. *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.,* 175 F.R.D. 658, 663 (S.D.Cal. 1997) (finding "because defendant has failed to appear, plaintiff may request an award of reasonable attorney fees"). Defendants' failure to appear, therefore, also supports Plaintiff's request for attorney fees.

In determining the attorney fees at issue, counsel should provide (1) contemporaneous billing records, (2) counsel's hourly rate, and (3) evidence that this rate is reasonable for an attorney of like skill and experience. *See Taylor Made Golf,* 175 F.R.D. at 663–4. Counsel for Plaintiff has submitted such documentation of their work on this case which began on June 23, 2000. *See Saggese Dec. Ex. Q.* Accordingly this Court has reviewed such documentation and finds that Plaintiff is entitled to $31,702.86 in attorney fees and costs.

### III. *Conclusion*

Based on the foregoing discussion, pursuant to Federal Rule of Civil Procedure 55 and to Rule 14.12 of the Local Rules of the Central District of California, this Court grants Plaintiff DCI's Application for Default Judgment, Permanent Injunction and Attorney Fees and costs in the amount of $31,702.86 against Defendants ANIMAL PLANT, INC. and ISABELLA STRASHNOY.

**IT IS SO ORDERED.**