**PHILIP MORRIS USA INC., Plaintiff,**

v.

**CASTWORLD PRODUCTS, INC.,**
a California corporation,
Defendant.

**No. CV 03–4045–GAF.**

United States District Court,
C.D. California.

Dec. 31, 2003.

Michael T. Williams, John C. Ulin, Charles M. Grant, Heller, Ehrman, White & McAuliffe, Los Angeles, CA, Brent Nelson Rushforth, Kenneth L. Chernof, Heller, Ehrman, White & McAuliffe, Washington, DC, for plaintiff.

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT and PERMANENT INJUNCTION

FEESS, District Judge.

## I.

## INTRODUCTION

On June 9, 2003, Plaintiff filed this action against Defendant Castworld Products Inc. ("Defendant"), after Defendant was identified by the United States Bureau of Customs and Border Protection ("Customs") as the importer of 8,000,000 counterfeit MARLBORO® and MARLBORO Red Label® cigarettes in violation of state and federal laws. Plaintiff's Complaint contains the following six claims: (1) infringement of registered trademarks in violation of Lanham Act § 32, 15 U.S.C. § 1114(1); (2) false designation of origin and trademark and trade dress infringement in violation of Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A); (3) unlawful importation of goods bearing infringing marks in violation of § 42 of the Lanham Act, 15 U.S.C. § 1124; (5) unlawful importation of goods bearing infringing marks in violation of § 1526(a) of the Tariff Act, 19 U.S.C. § 1526(a); (5) unfair competition in violation of the common law of the State of California; (6) unfair competition in violation of the California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

Defendant, although properly served with the summons and complaint, has failed to respond to the complaint or otherwise participate in any aspect of this litigation. Indeed, although Plaintiff requested and obtained entry of default, and has now moved for entry of default judgment, Defendant has filed no opposition to either the request or the motion. Accordingly, because Plaintiff has satisfied the procedural requirements for obtaining a default judgment and because the allegations of the complaint establish all of the necessary elements of Plaintiff's Lanham Act and state law claims, the Court **GRANTS** Plaintiff's motion for a default judgment, entry of a permanent injunction, and an award or statutory damages, attorney's fees and costs.

## II.

### STATEMENT OF FACTS [1]

Plaintiff, the U.S. owner of the famous Marlboro Marks under which MARLBORO cigarettes are sold, has spent substantial time, effort, and money advertising and promoting its mark throughout the United States. (Complaint, ¶ 27.) Consequently, the marks have developed significant good will, have become distinctive, have acquired secondary meaning, are among the most valuable trademarks in the world, and are among the most widely recognized product symbols by consumers in the United States. (*Id.* ¶¶ 5, 27). Plaintiff is the registered owner of all the marks in question and Plaintiff has filed a copy of the certificates of registration and recorded them with the Secretary of the Treasury and Customs in accordance with § 1526(a) of the Tariff Act, 19 U.S.C. § 1526(a) and § 42 of the Lanham Act, 15 U.S.C. § 1124. (*Id.* ¶¶ 7, 28; Exhs. 2–9 thereto).

Customs periodically conducts sample inspections of a fraction of merchandise imported into the United States. (*Id.* ¶ 8). On June 10, 2002, pursuant to one such inspection at the Port of Los Angeles in Long Beach Harbor, Defendant was named in a Notice of Seizure of Infringing Merchandise issued by Customs as the importer of a commercial quantity of 40,000 cartons of counterfeit cigarettes, each containing 200 counterfeit cigarettes, bearing imitation MARLBORO® and MARLBORO Red Label® trademarks. (*Id.* ¶¶ 9, 18; Exh. 1 to Compl.). The notice further indicated that the counterfeit cigarettes were imported by Defendant from an exporter located in China (Jia Yong Industry Company limited, Room 11M 7th, Yonghui Building, Shanghai, China). (*Id.* ¶ 19). Neither Plaintiff nor any of its affiliates manufactures or sells any MARLBORO® or MARLBORO Red Label® products which are authorized by any of them to be re-exported from Asia, including China and the Special Administrative Regions, thereof. (*Id.*).

Plaintiff asserts that Defendants are engaged in an ongoing and unrestrained commercial importation of counterfeit cigarettes into the United States, and that the importation of these counterfeit cigarettes bearing spurious Marlboro Marks was done intentionally and knowingly in connection with the unlawful sale, offering for sale, or distribution, which constitutes an illegal use in commerce of Plaintiff's marks. (*Id.* ¶¶ 9, 10, 23–25). In fact, Plaintiff maintains that such sale and distribution in the U.S. was imminent but for Customs' interceding seizure of these counterfeit cigarettes. (*Id.* ¶ 23).

The counterfeit cigarettes seized are not the same or of the same quality as those manufactured and sold by Plaintiff under the same brand names. (*Id.* ¶ 26). For these reasons, consumers who purchase the counterfeit cigarettes, likely will be confused as to the source of origin of the cigarettes (believing them to be genuine) and are likely to be disappointed by the lower quality of the faux Marlboros, the blame of which will fall upon Philip Morris. (*Id.* ¶¶ 11, 26). Consequently, Plaintiff is suffering a loss of the enormous goodwill Plaintiff has created in its

---

1. The facts are generally culled from the complaint and Exhibits 1–9 thereto, the memorandum of points and authorities and authorities in support of Plaintiff's motion for default judgment and Exhibits A–C and the Grant Declaration thereto. Because Defendants did not answer the complaint, the court must accept the allegations contained in the complaint as true. FED. R. CIV. P. 8(d).

marks and is losing profits from lost sales of genuine products. (*Id.* ¶ 26).

## III.

### LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) provides for a court ordered default judgment following entry of default by the court clerk under Rule 55(a). *See Kloepping v. Fireman's Fund*, No. C 94–2684 TEH, 1996 WL 75314, at *2 (N.D.Cal.1996). The FRCP and the local rules in the Central District of California require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. FED. R. CIV. P. 55(b)(2); C.D. Cal. L.R. 55–1.[2]

■ Entry of default judgment is governed by FRCP 55 and is left to the trial court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Because granting or denying relief is entirely within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court ordered judgment. *Id.* The Ninth Circuit holds that a district court may consider the following factors in exercising its discretion to award a default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal. 1999).

■ A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172 (C.D.Cal.2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.1987); *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D.Cal.2001). Plaintiff is required to prove all damages sought in the complaint. In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." FED. R. CIV. P. 54(c). In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. FED. R. CIV. P. 55(b)(2).

■ Plaintiff's burden in "proving up" damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 159 (2d Cir.1992). Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. *Wu v. Ip*, No. C93–4467 FMS, 1996 WL 428342 at *1 (N.D.Cal.1996) (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159). However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir.1992).

■ Finally, fundamental fairness, required by the due process of law, limits the scope of relief. Schwarzer, *et al., California Practice Guide: Federal Civil Procedure Before Trial* § 6:131 (2003). Under FRCP

2. FED. R. CIV. P. 55(b)(2) and Local Rule 55–1 provide that notice is required to be given to a party against whom judgment by default is sought, if that party has appeared in the action.

54(c) and 55(d), a judgment by default shall not award damages that are different or exceed the amount requested in plaintiff's complaint. Similarly, under FRCP 8(a)(3), the demand for relief must be specific. Therefore, a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint.

## IV.

## ANALYSIS

### A. PLAINTIFF HAS COMPLIED WITH FRCP 55(A), FRCP 54(C), AND LOCAL RULES 55–1 AND 55–2

█ Plaintiff has satisfied the procedural requirements for default judgment pursuant to FED. R. CIV. P. 55(a), Local Rules 55–1 and 55–2, and FED. R. CIV. P. 54(c). In the pending action, Plaintiff (1) served Defendant with the summons and complaint on June 19, 2003, Grant Decl. ¶ 3; (2) caused the clerk to enter the default against Defendant on September 19, 2003 for failure to answer, *id.* ¶ 9; (3) stated that Defendant is not a minor or incompetent lacking adequate representation, *id.* ¶ 10; (4) stated that Defendant is not in the military or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940, *id.* ¶ 11; (5) notified Defendant of the application for default judgment pursuant to Local Rule 55–2, *id.* ¶¶ 6–7; Exh. A & B to Mot.; and (6) filed a declaration regarding the amount of costs sought and submitted calculations regarding the amount of attorneys' fees available pursuant to Local Rule 55–4; *id.* ¶ 2. Finally, because Plaintiff does not request relief that differs from or exceeds that prayed for in the complaint, the application for default judgment complies with FRCP 54(c). Accordingly, the Court need only analyze the *Eitel* factors to determine whether default judgment is appropriate.

### B. EITEL FACTORS SUPPORT GRANTING DEFAULT JUDGMENT AGAINST DEFENDANT

#### 1. Possibility of Prejudice to Plaintiff

█ With respect to the first *Eitel* factor, Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery. Furthermore, since, by defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments, the evidence before the Court established that Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered.

#### 2. Substantive Merits and Sufficiency of the Complaint

The second two *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Cal. Sec. Cans*, 238 F.Supp.2d at 1175 (citations and quotations omitted). In order to weigh these two factors, the Court must review Plaintiff's claims. In this case, Plaintiff has adequately pleaded all six claims against Defendant: (1) trademark infringement; (2) false designation of origin and trade dress infringement; (3) unlawful importation of trademark infringing goods in violation of the Tariff Act and the common law of California; (4) California common law unfair competition; and (5) statutory unfair competition.

To prevail on its trademark infringement claim under 15 U.S.C. § 1114(1)(a). Plaintiff must prove that, without its consent, Defendant used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. § 1114(a)(1).

To prevail on its false designation of origin claim, Plaintiff must establish that Defendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of his goods by Plaintiff. 15 U.S.C. § 1125(a)(1)(A).

An unlawful importation claim under 15 U.S.C. § 1124 and 19 U.S.C. § 1526(a) re-

quires proof of importation of merchandise which bears copies or simulations of the federally registered trademarks.

To prevail on its common law unfair competition claim, Plaintiff must prove that Defendant tried to pass off false goods as those of Plaintiff, or as somehow related or associated with, or sponsored or endorsed by Plaintiff. *See, e.g., Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1263, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992).

Finally, to prevail on its unfair competition claim under Cal. Bus. & Prof.Code § 17200, et seq., Plaintiff must show that Defendant engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

Plaintiff's Complaint properly alleges the necessary elements for each of its causes of action. The Complaint identifies Plaintiff's ownership of and exclusive right to use the incontestable and registered trademarks, the extent to which Plaintiff has used the marks, and the fame of the marks. (Compl.¶¶ 5–7, 27–29). Plaintiff also alleges that Defendant used the marks in commerce, in connection with the importation of counterfeit cigarettes, without Plaintiff's consent. (*Id.* ¶¶ 4, 18–25). In addition, Plaintiff's Complaint alleges that Defendants' use of Plaintiff's marks is likely to cause confusion or mistake or to deceive customers and has thereby damaged Plaintiff. (*Id.* ¶¶ 5–12, 26). According to Plaintiff, Defendant's importation of the 8,000,000 counterfeit cigarettes was willful and deliberate. (*Id.* ¶¶ 18–21). Again, as Defendants' failure to answer constitutes an admission as to the averments contained in the complaint, the Court must accept these allegations as true. FED. R. CIV. P. 8(d). Accordingly, the second and third *Eitel* factors likewise favor entry of default judgment against Defendants.

### 3. Amount at Stake

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans.,* 238 F.Supp.2d at 1176; *see also Eitel,* 782 F.2d at 1471–72. Under the Lanham Act, when

the court finds that the use of the counterfeit mark was willful, statutory damages "not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" are available. 15 U.S.C. § 1117(c)(2). Plaintiff alleges that Defendant imported counterfeit cigarettes that infringed at least two of Plaintiff's trademarks, both of which are valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065. Therefore, Plaintiff is entitled to recover up to $2,000,000 in statutory damages. Given Defendant's infringing importation of large, commercial quantities of counterfeit Marlboro cigarettes, the likelihood that its conduct would cause confusion or mistake or otherwise deceive customers, and its failure to comply with the judicial process or to participate in any way in the present litigation, the Defendant has engaged in willful use of the counterfeit mark, which justifies the imposition of a substantial monetary award. Accordingly, this factor favors granting default judgment.

### 4. Possibility of Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc.,* 826 F.2d at 917–18. Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against the Defendant. Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote. This factor therefore favors the entry of default.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306,

314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In this case, Defendant received notice of both the complaint and the motion for default judgment. (Grant Decl. ¶¶ 3, 6–7). Defendants failed to answer the complaint and have not opposed this motion. In light of the multiple notices delivered to Defendant regarding the pending lawsuit, the extended period of time that has elapsed, and Defendant's resistance to Plaintiff's attempts to resolve this matter through settlement, the possibility of excusable neglect is remote. Accordingly, the default did not result from excusable neglect, but rather from willful disobedience, and therefore the sixth *Eitel* factor favors granting a default judgment.

### 6. Policy for Deciding on the Merits

Finally, the mere existence of FED. R. CIV. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *Cal. Sec. Cans.,* 238 F.Supp.2d at 1177. "Moreover, Defendant's failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* This is precisely what occurred in the present case. Therefore, the seventh *Eitel* factor does not preclude the Court from entering default judgment against Defendant. *Id.*

### C. REMEDIES

FRCP 54(c) allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default. Under FRCP 8(a)(3), the demand for relief must be specific. In addition, Plaintiff must "prove up" the amount of damages that it is claiming. In the instant motion, Plaintiff seeks a permanent injunction, statutory damages in an amount of $2,000,000, $43,600 in attorneys' fees, and costs in the amount of $472.95. These remedies do not differ from the relief prayed for in the complaint.

### 1. Statutory Damages are Appropriate

■■■ Plaintiff is entitled to the damages. Under the Lanham Act, where the court finds that the use of the counterfeit mark was willful, statutory damages "not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" are available. 15 U.S.C. § 1117(c). As this provision is a recent addition to the Lanham Act, there is little case law available to assist courts in determining an appropriate award. (Mot. at 6). Consequently, courts faced with determining statutory damages under the Act have analogized to the body of case law interpreting a similar provision in the Copyright Act. *See Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 166 (S.D.N.Y.1999). The Supreme Court has held that deterrence of future infringement is an important factor in determining damages under the Copyright Act, and therefore an award of statutory damages need not equal the amount of a plaintiff's actual damages. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336–37 (9th Cir.1990). The *Woolworth* Court stated:

> The statutory rule, formulated after long experience, not merely compels restitution for profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate statutory policy.

*F.W. Woolworth Co.,* 344 U.S. at 233, 73 S.Ct. 222.

In this case, Plaintiff seeks to deter Defendant and similarly situated importers from bringing into commerce counterfeit cigarettes bearing Plaintiff's marks and from exhibiting total disregard for the Federal Rules of Civil Procedure. (Mot. at 7). Plaintiff also seeks compensation for the damage caused by Defendant's infringement of its trademarks and to punish Defendant appropriately for counterfeit activities that have not been subject to interdiction by Customs. (*Id.*). Where, as here, Defendant imports 8,000,000 counterfeit cigarettes, having a street value of millions of dollars, Defendant obviously knew that its conduct constituted

infringement. (*Id.*). Plaintiff alleges that Defendant imported counterfeit cigarettes that infringed at least two of Plaintiff's trademarks, both of which are valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065. Accordingly, Plaintiff is entitled to up to $2,000,000 in statutory damages. For the reasons detailed above, an award of $2,000,000 seems reasonably calculated to serve all of the above stated purposes and, compared to Plaintiff's actual treble damages, is a conservative award.

### 2. Injunctive Relief is Appropriate

Plaintiff is also entitled to permanent injunctive relief. The Lanham Act gives the Court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); *Cal. Sec. Cans*, 238 F.Supp.2d at 1177–78. In this instance, Plaintiff requests that the Court issue a permanent injunction against Defendant and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, that includes the following material terms:

1. A prohibition against importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit cigarettes bearing the MARLBORO® or MARLBORO Red Label® brand cigarettes;

2. A prohibition against assisting, aiding, or abetting any other person or entity in importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit cigarettes bearing the Marlboro Marks including, without limitation, MARLBORO® or MARLBORO Red Label® brand cigarettes;

(Mot. at 8).

The Court finds that the proposed injunctive relief is appropriate because the claims otherwise warrant an injunction, and Defendant, though well aware of serious claims brought against it, has chosen to ignore this lawsuit. Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.

### 3. Attorneys' Fees are Appropriate

Section 1117(a) gives the Court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir.1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir.1982). Additionally, a case may be deemed "exceptional," and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings and does not appear. *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D.Cal.1997) (quoting *Lien v. Compusoft of Kalamazoo, Inc.*, 1991 WL 641575, *5 (W.D.Mich.1991) (defendant's "lack of cooperation and disrespect for the judicial process constitutes exceptional circumstances warranting an award of attorney's fees to plaintiff in this action.")).

Plaintiff alleges Defendant's conduct was willful and deliberate and that Defendant refused to meaningfully communicate with Plaintiff regarding this lawsuit. Therefore, Plaintiff seeks a minimal award of attorneys' fees in the amount provided by this Court's default judgment fee schedule. For a damage award over $100,000, the fee schedule provides for an award of attorneys' fees equal to $5,600 plus 2% of the amount of the damages over $100,000. *See* Local Rule 55–4. For a damage award of $2,000,000, the attorneys' fees are therefore $43,600, which is the exact amount requested by Plaintiff. (*Id.*; Mot. at 9).

### 4. Costs are Appropriate

Finally, when a violation of any right under the registrant of a mark registered in the Patent Office, or a violation under § 43(a), shall have been established in a civil action arising under the Lanham Act, the

plaintiff shall be entitled, subject to the principles of equity, to recover the costs of the action. 15 U.S.C. § 1117(a). Thus, a finding of Defendant's liability under the Lanham Act entitles Plaintiff to recover its costs in this action that are specific to Defendant. Plaintiff seeks reimbursement of costs in the amount of $472.95, an amount comprised of a fee for service of process ($307.20) and filing fees for the civil complaint and the request for entry of default ($165.75). (Grant Decl. ¶ 2). Accordingly, the Court should **GRANT** Plaintiff's request for an award of costs in the amount of $472.95.

## V.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED** and damages, attorney fees, costs, and permanent injunctive relief are awarded.

IT IS SO ORDERED.