920 F.2d 1468
 24 Collier Bankr.Cas.2d 562, Bankr. L. Rep. P 73,741
In re Edward R. FITZSIMMONS, Debtor.
Edward R. FITZSIMMONS, Appellant,
v.
M. NOLDEN, Trustee of the Chapter 7 Estate of Edward R.
Fitzsimmons; Chemgold, Inc., a California
corporation; Trabefin, A.G., a Swiss
corporation, Appellees.
TRABEFIN, A.G., a Swiss corporation, Appellant,
v.
M. NOLDEN, Trustee of the Chapter 7 Estate of Edward R.
Fitzsimmons; Edward R. Fitzsimmons; Chemgold,
Inc., a California corporation, Appellees.
 Nos. 88-2597, 88-2598.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 6, 1989.*
Decided Dec. 7, 1990.
 
 Edward R. Fitzsimmons, Mill Valley, Cal., pro. per.
 Eric L. Henrikson, Henrikson & Gee, Oakland, Cal., for appellee, M. Nolden.
 Debra L. Nolan, Law Office of Robert A. Huddleston, Walnut Creek, Cal., for appellee, Chemgold, Inc.
 Howard L. Hibbard, Hibbard & Hibbard, Redwood City, Cal., for appellant, Trabefin, A.G., a Swiss Corp.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG, HALL and BRUNETTI, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Trabefin, A.G. and Edward R. Fitzsimmons appeal the district court's dismissal of their bankruptcy appeal. The district court dismissed Trabefin's appeal under Northern District of California Local Rule 720-2 for failure to comply with Bankruptcy Rule 8006 which governs perfection of bankruptcy appeals. We affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 M. Nolden, the trustee of the bankrupt estate of Edward R. Fitzsimmons, filed suit in 1983 in bankruptcy court to establish whether a large amount of stock in Chemgold Inc. ("Chemgold"), a California mining company, belonged to Fitzsimmons (and hence to the estate) or to Trabefin, A.G. ("Trabefin"), a Swiss corporation which held the Chemgold stock.[1] The trustee alleged that Trabefin was Fitzsimmons' alter ego fraudulently created by Fitzsimmons to conceal his ownership of the Chemgold stock.[2] The bankruptcy court after a trial ruled in the trustee's favor on December 16, 1986.
 
 
 3
 On January 30, 1987, Trabefin mailed to opposing counsel a "Request for Record for Appeal." On February 2, 1987, Trabefin filed a timely notice of its appeal to the district court. Trabefin alleges that February 2nd is also the date when it personally served all parties, including the trustee's attorney, with a designation purportedly served of the record. The trustee's attorney denies receiving a copy of the designation on the 2nd.
 
 
 4
 On February 25, 1987, the trustee filed an objection to Trabefin's "Request for Record on Appeal" because it did not constitute a proper designation of record. On March 6, 1987, the trustee's attorney received in an envelope postmarked March 5, 1987, a copy of Trabefin's designation of the record. This copy bore a February 6, 1987 court file stamp with a proof of service dated February 17, 1987. On March 14, 1987, the trustee filed a counter-designation of record in response to the designation of the record mailed on March 5. On March 23, 1987, the bankruptcy court's official reporter mailed to Trabefin an estimate of the cost to prepare the reporter's transcripts. On April 16, 1987, Trabefin formally requested the bankruptcy court's official reporter to prepare the reporter's transcripts and to post the estimated cost of the transcripts.
 
 
 5
 On July 25, 1987, a bankruptcy clerk by letter requested of Trabefin (1) the money for the cost of preparing the clerk's transcripts, and (2) an amendment of the original designation of the record to correct misdesignated trial dates. The letter also advised Trabefin that the total estimate for copying the clerk's transcripts and the reporter's transcripts would be provided upon receipt of the amended designation. Approximately two months later, on September 25, 1987, Trabefin mailed the amended designation of record.
 
 
 6
 On October 14, 1987, a bankruptcy clerk informed the trustee's attorney that Trabefin had not yet posted the cost for preparing the clerk's transcripts; and therefore, that the preparation of the clerk's record had not yet begun. Two days later, on October 16, 1987, the trustee filed its motion to dismiss based on the delays in the designation of the record and the preparation of the transcripts.
 
 
 7
 Trabefin paid the bankruptcy court the required costs on October 23, 1987. The transcripts were forwarded to district court on November 1, 1987.
 
 
 8
 On January 15, 1988, the district court granted the trustee's motion to dismiss. The district court noted in its order that it was reluctant to dismiss, but that this was an "extreme case." The district court highlighted the following factors as justifying dismissal: (1) Trabefin did not serve the designation of the record for a month, well after the ten days provided by Bankruptcy Rule 8006 had expired; (2) Trabefin failed to take prompt steps to have the reporter's transcripts prepared; (3) Trabefin failed for two months to amend its "slipshod" designation of the record; (4) Trabefin failed to post the necessary fees or to contact the reporter until after the dismissal motion was filed; and (5) the consequences of these delays were not purely procedural but that in a bankruptcy case creditors can incur substantial prejudice from delay.
 
 
 9
 On April 20, 1988, the district court affirmed its January 15, 1988 decision and denied Trabefin's motion for reconsideration. Trabefin filed a timely appeal.
 
 STANDARD OF REVIEW
 
 10
 This court reviews the district court's dismissal for non-compliance with non-jurisdictional bankruptcy rules for an abuse of discretion. Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 706-07 (9th Cir.1986).
 
 DISCUSSION
 
 11
 Trabefin argues that the district court abused its discretion when it dismissed its case pursuant to Bankruptcy Rule 8006 for four reasons. First, Trabefin claims that its conduct was not the product of willfulness, bad faith or fault. Second, no dismissal should have been entered because Trabefin did not disobey a court order prior to dismissal. Third, the district court did not consider alternative sanctions. Lastly, no party suffered prejudice.
 
 1. Willfulness, Bad Faith and Fault
 
 12
 We strongly disagree with Trabefin's characterization of its own conduct. We conclude that Trabefin acted in bad faith. The extent of its bad faith becomes clear upon review of what occurred in this case:
 
 
 13
 Trabefin lost in its claim to some $1.5 million in stock proceeds against the trustee in December of 1986 in bankruptcy court. Trabefin should have served its notice of the designation of record within 10 days of its February 2, 1987 notice of appeal. Bankruptcy Rule 8006. Instead, Trabefin took well over a month, until March 5, 1987, to effect proper service.
 
 
 14
 Because Trabefin was to designate transcripts, upon filing of the designation of record, it had "immediately " to (1) send a written request for transcripts to the bankruptcy clerk, and (2) make arrangements for the payment of the transcripts. Id. (Emphasis added). These two tasks should have been completed around mid-February. Instead, Trabefin waited two months after filing the designation of record to make a formal request of transcripts of the clerk. Moreover, because this initial request was, as the district court put it, "slipshod," the bankruptcy clerk was forced to demand an amended request. Trabefin did not act immediately even when notified of its error; rather, it waited another two months to send the amended request.
 
 
 15
 Trabefin's behavior with the payment for the transcripts was no less dilatory. Trabefin did not pay the fees for the transcripts until late October of 1987, some eight months after the fees should have been posted. We note that Trabefin posted the fees only after the trustee had filed a motion to dismiss. Had the trustee not done this, one can only speculate how long Trabefin might have continued to delay.
 
 
 16
 We note also that another two years of delay has occurred because of this litigation on appeal of the motion to dismiss. Altogether, three years have been wasted because of Trabefin's failure to follow a few simple procedural steps. This delay has continued to put off the day when the rights to the $1.5 million are finally decided.
 
 
 17
 Trabefin's explanation of its delays indicates that there was misrepresentation to the district court about the facts of service of its designation of record. Trabefin claims it personally served all parties on February 2. However, the trustee's attorney denies receiving service on the 2nd. This denial is supported by the fact that (1) Trabefin served by mail a copy of the designation on March 5 (as evidenced by the postmark) to the trustee's attorney; and (2) the trustee filed objection to the lack of a designation of the record on February 25. Neither action is explicable if, as Trabefin claims, service was completed on February 2. Why would one serve a document twice? Why would the trustee object to the lack of a document already served and received and assert it had never been received? And if, as Trabefin now claims, it served the document on the 2nd, why did it not so respond when the trustee filed the objection? Moreover, Trabefin has never produced a February 2nd proof of service.
 
 
 18
 In sum, Trabefin has caused a delay of three years. Moreover, when called upon to explain the delay, Trabefin has apparently misrepresented the facts to the district court. Such behavior is clearly bad faith conduct.
 
 2. Disobedience of Prior Order
 
 19
 We disagree with Trabefin's assertion that dismissal can be granted only after a district court's prior order has been disobeyed. No actual disobedience of an order is necessary; it is enough if the district court considers alternative sanctions in lieu of dismissal. See In re Hill, 775 F.2d 1385, 1387 (9th Cir.1985). Moreover, in egregious circumstances such as these, not even consideration of alternative sanctions is necessary before dismissal. See In re Donovan, 871 F.2d 807, 808-09 (9th Cir.1989).
 
 
 20
 We also note that while Trabefin may not have violated a direct court order, it did violate a number of bankruptcy court rules. First, Trabefin violated Bankruptcy Rule 8006's mandate to serve a designation of record within ten days. Second, Trabefin failed for some five months to make a proper written request for records, even though Rule 8006 requires a party make a request immediately upon filing of the designation of record. Third, Trabefin ignored Rule 8006's requirement of immediate arrangement for payment of fees and instead arranged for the fees some eight months too late. Even then, Trabefin acted only in response to the trustee's motion to dismiss.
 
 
 21
 We note also that even though the district court did not directly warn Trabefin that dismissal could occur, both Northern District of California Local Rule 720-2 and Bankruptcy Rule 8001 make clear that the district court may dismiss a case if a party fails to comply with Bankruptcy Rule 8006. Rule 720-2 states that "[i]f the appellant ... fail[s] to perfect the appeal in the manner described in Bankruptcy Rule 8006, any appellee may file a motion in the district court to dismiss the appeal." Rule 8001 states that when an appellant fails to perfect his or her appeal, he or she is subject to "such action as the district or bankruptcy court deems appropriate, which may include dismissal of the appeal." (emphasis added).
 
 
 22
 In sum, Trabefin's portrait of itself as a party sideswiped by an unforeseeable dismissal is inaccurate. Trabefin violated Bankruptcy Rule 8006 three times. Moreover, Trabefin ignored two rules that warned of dismissal. Thus, we conclude that Trabefin recklessly drove head on into a dismissal.
 
 3. Consideration of Alternative Sanctions
 
 23
 We agree that as a general rule the district court must consider alternative sanctions to dismissal. See, e.g., Hill, 775 F.2d at 1387. However, we reject Trabefin's assertion that if a district court fails to consider alternatives, a dismissal is improper no matter how bad the conduct of the attorney.
 
 
 24
 We also note that as a general rule the district court must consider the relative fault of the client and the attorney. See, e.g., Greco v. Stubenberg, 859 F.2d 1401, 1404 (9th Cir.1988).[3]
 
 
 25
 The general rule (consideration of alternative sanctions and relative fault) regarding non-jurisdictional dismissal must be read in harmony with another principle: "[I]n 'egregious circumstances' a court may dismiss a case for noncompliance with procedural rules without explicit consideration of alternative sanctions." Donovan, 871 F.2d at 808-09.
 
 
 26
 Moreover, we note that the general rule does not consider the possibility of bad faith. Whether or not a party has acted in bad faith is a key factor that other courts have considered when ruling on a motion to dismiss based on a party's failure to comply with Bankruptcy Rule 8006. See, e.g., In re Comer, 716 F.2d 168, 177 (3rd Cir.1983) (court upheld the district court's refusal to dismiss on the basis of non-compliance with Bankruptcy Rule 8006, where the district court had based its refusal on lack of prejudice or bad faith); In re Winner Corp., 632 F.2d 658, 661 (6th Cir.1980) (court found no evidence of bad faith which would justify dismissal on the basis of insufficient designation of the record); In re France, 63 B.R. 775, 776 (D.N.H.1986) (absent evidence of prejudice to defendant, or of bad faith, dismissals under Bankruptcy Rules will rarely be granted.); and In re Bienert, 48 B.R. 326, 327 (N.D.Iowa, 1985) (refusal to dismiss for non-compliance with Bankruptcy Rule 8006 because there was no bad faith).
 
 
 27
 Lastly, the general rule must be read in light of the policy considerations that underlie the rule. The general rule stems from this court's analysis in Hill. The Hill case rested its rule, consideration of alternative sanctions, on several policy grounds.[4] First, the desire that the district court create a record from which an appellate court could determine why dismissal was entered. See 775 F.2d at 1387 (" 'We also stated the need an appellate court has for the trial court's statement or recitation as to why the particular circumstances demonstrated a need for the sanctions imposed.' " (quoting In re Russell, 746 F.2d 1419, 1420 (10th Cir.1984)). Second, establishment for the district court of guidelines when granting non-jurisdictional dismissals because Bankruptcy Rule 8001(a), which allows dismissals for failing to perfect an appeal, provides no guidelines at all. See id. Finally, the most basic policy consideration was to create a set of safeguards to ensure that the district court use the sanction of dismissal only when appropriate given the conduct at issue. See id. ("[T]he selection of the sanction to be imposed must take into consideration the impact of the sanction and the alternatives available to achieve assessment of the penalties in conformity with fault.") (emphasis added).
 
 
 28
 Considering all of these factors, we reach the following conclusions. First, unless there are egregious circumstances, the district court must, as the general rule requires, explicitly consider relative fault and alternative sanctions.[5] Second, as in other jurisdictions, the existence of bad faith is a factor that must be considered when reviewing a motion to dismiss for non-compliance with Bankruptcy Rule 8006.
 
 
 29
 Third, because bad faith behavior poses such a serious threat to the authority of a district court, the existence of bad faith constitutes egregious circumstances which can warrant dismissal even without the explicit consideration of alternative sanctions and relative fault.[6] To take any other view would allow an unethical attorney to abuse the judicial process by creating a protracted delay without any real threat of penalty. Such a delay strategy could be particularly attractive in bankruptcy proceedings because, as here, it would give leverage in settlement proceedings to losers. Thus, the message to one bent on delay would be: "No matter how gross the abuse of the judicial process, your case will not be dismissed until after you have failed to comply with some alternative sanction." We decline to read the general rule as compelling such a message.
 
 
 30
 In any event, the district court here implicitly considered alternatives to dismissal, as evidenced by the fact that it waited nearly a year before dismissing the appeal. Cf. Malone v. United States Postal Serv., 833 F.2d 128, 132 n. 1 (9th Cir.1987) (noting that a district court can consider alternatives to dismissal under Federal Rule of Civil Procedure 16(f) and 41(b) by " 'placing the case at the bottom of the calendar.' ") (quoting Titus v. Mercedes Benz of North America, 695 F.2d 746, 749 n. 6 (3d Cir.1982)), cert. denied, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).
 
 
 31
 Fourth, we conclude that even if a case turns on bad faith, Hill 's policy consideration of making an adequate record for appeal require us to review the record to ensure that it is sufficient for us to determine why the district court granted the motion to dismiss.
 
 
 32
 Fifth, employing a bad faith standard to determine the legitimacy of a dismissal, just as consideration of the alternative measures and the relative fault standard of the general rule, complies with Hill 's policy of ensuring that guidelines limit the district court's discretion to dismiss.[7]
 
 
 33
 Last, from Hill, we determine that the bottom line policy consideration is whether the sanction of dismissal matches the conduct at issue. Consequently, we do not read the general rule to require reversal and remand in a case where the sanction was clearly warranted. Rather, we read the general rule as a safeguard to ensure that the dismissal is fair. The safeguard against arbitrary dismissal is satisfied when dismissal is justified by a record of bad faith.
 
 
 34
 Applying these considerations to this case, we conclude the district court did not abuse its discretion when it dismissed Trabefin's appeal. Bad faith in this case constitutes an egregious circumstance that makes dismissal appropriate even when the record fails to show explicitly the consideration of alternative measures and relative fault.
 
 
 35
 The district court entered two orders which clearly explained its decisional process. They explained in depth the history of the delay and the district court's reasons for granting dismissal. These orders constitute a sufficient record for review. Our review of that record convinces us that the sanction of dismissal was fair because of the bad faith conduct at issue here.
 
 4. Prejudice
 
 36
 We disagree with Trabefin's claim that the trustee suffered no prejudice in this matter. As we noted before, the trustee has endured three years of delay due to Trabefin's failure to comply with Bankruptcy Rule 8006. Such a delay has undoubtedly cost the trustee considerable funds and compromised the trustee's settlement position because of the uncertainty created as to the final resolution of the issue involving $1.5 million in stock holdings.
 
 CONCLUSION
 
 37
 Dismissal of Trabefin's appeal is affirmed. We emphasize that nothing in our decision detracts from the importance that we attach to the safeguards that the general rule provides. Our decision addresses only those cases in which (1) the dismissed party acted in bad faith and (2) the district court has failed explicitly to comply with the general rule of showing in the record consideration of alternative sanctions and relative fault.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The proceeds from the sale of this stock ($1.5 million) are held in trust pending the final resolution of this matter
 
 
 [2]
 For the rest of this opinion, the two appellants are referred to as "Trabefin" because (1) Trabefin has conducted the bulk of the litigation and (2) Fitzsimmons joined in some but not all of Trabefin's actions below
 
 
 [3]
 We note that we do not read this language from Greco as permitting a client to escape the consequences for his or her attorney's conduct. Rather, this language is a reminder to the district court that the sanction of dismissal is a harsh one and that its impact will most affect the client, and not the attorney who in all likelihood caused the offensive conduct
 We reach this conclusion for two reasons. First, Greco relies on Hill for this language. Id. (citing Hill, 775 F.2d at 1386). However, the Hill case never suggested that a client would escape dismissal on the grounds that the attorney and not the client was at fault. See Hill, 775 F.2d at 1387. Indeed, Hill expressly rejected such a result: "We have no intent to disavow the established principle that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his client." Id. Rather, Hill emphasized the fact that when the attorney errs, the client suffers. See id. We believe that Hill emphasized this fact to give pause to a district court when it considers dismissing a case on non-jurisdictional grounds. See id. However, Hill' § intention to give the district court from dismissing because the attorney, not the client, was at fault.
 Second, to read Greco as mandating a reversal whenever the attorney and not the client is at fault would create an intracircuit conflict. As already noted, Hill itself states that the client must accept the consequences of his or her attorney's errors. Other cases in this circuit have emphasized this rule. For example, in Hamilton v. Neptune Orient Lines, Ltd., 811 F.2d 498, 500 (9th Cir.1987), we noted that " '[t]he plaintiff cannot avoid ... dismissal by arguing that [he or she] is an innocent party who will be made to suffer for the errors of [his or her] attorney.' " Id. (quoting Anderson v. Air West, Inc., 542 F.2d 522, 526 (9th Cir.1976)).
 We note that our rejection of the "it's my attorney's fault" excuse is a necessary one. A rule which would allow parties to escape the consequences for their attorney's misconduct solely on the basis of the excuse "it was my attorney's fault" would strip the district court of much of its ability to discipline parties within their courtrooms. Such a rule would force the district court into examinations of attorney-client relationships to assess relative fault. We have already rejected such examinations: "Regardless of where the blame should lie, we will not enter the business of resurrecting lawsuits gone astray because of ruptures in the attorney-client relation." Id. (citation omitted). While we require the district court to consider the relative fault of the client and the attorney, we do not bar a district court from dismissing even when only the attorney is at fault.
 
 
 [4]
 We note that although Hill mentions relative fault of the attorney and client, the addition of relative fault into our standard for non-jurisdictional dismissal was not formalized until Greco. However, all of the policy considerations mentioned in Hill with respect to consideration of alternative sanctions apply with equal force with relative fault
 
 
 [5]
 We note that actual use of alternative sanctions prior to dismissal constitutes explicit consideration of alternative sanctions even if the order dismissing does not mention these prior acts. See Greco, 859 F.2d at 1404 (this court reviewed the record and found consideration of alternative sanctions based on the district court's prior conduct--imposition of deadlines and warning of dismissal)
 
 
 [6]
 We note that our bad faith standard naturally overrides the consideration of relative fault. As we indicated earlier, the consideration of relative fault is required only to remind the district court about the impact the sanction of dismissal has. This consideration does not bar dismissals based on the fact that only the attorney is at fault. See supra note 3. However, when bad faith is involved, such serious misconduct has occurred that the protection of the judicial process takes precedence over our concern that the district court has paused to consider whether the client should suffer the impact of a harsh penalty
 However, while we conclude that the existence of bad faith overrides consideration of relative fault, we explicitly do not view the two terms as synonymous. Our bad faith label refers only to conduct, such as that displayed here, which constitutes a protracted policy of delay. By contrast, relative fault refers to whether the fault for the delay rests with the party or the attorney.
 
 
 [7]
 We note that a bad faith standard is a useful benchmark in the area of questionable party conduct. This court has held that the sanction provisions of 28 U.S.C. Sec. 1927 are satisfied when there is bad faith litigation. See Soules v. Kauaians For Nukolii Campaign Commn., 849 F.2d 1176, 1185 (9th Cir.1988) ("A prerequisite to the imposition of Section 1927 sanctions is that the attorney's conduct be in bad faith.") (citation omitted)