PEPSICO, INC., et al., Plaintiffs,

v.

CALIFORNIA SECURITY CANS, et al., Defendants.

No. CIV.02–5321 NM(RZx).

United States District Court, C.D. California.

Dec. 27, 2002.

David C. Hilliard, Jonathan S. Jennings, Phillip Barengolts, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, William A. Finkelstein, Jonathan R. Goldblatt, Alschuler Grossman Stein & Kahan, LLP, Los Angeles, CA, for plaintiffs.

California Security Cans, pro se.

## ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOHN RANDALL COOK

MANELLA, District Judge.

## I. INTRODUCTION

On July 3, 2002, PepsiCo, Inc. ("PepsiCo"), Recot, Inc., and Frito–Lay, Inc. ("Plaintiffs") filed the instant action, alleging that Defendant John Randall Cook ("Defendant") manufactured, advertised, promoted, and sold products composed of modified PepsiCo products bearing the Pepsi, Diet Pepsi, Mountain Dew, and Aquafina trademarks owned and registered by PepsiCo, Inc. without PepsiCo, Inc.'s consent or authorization. Defendant was served with the Complaint on July 13, 2002. Default was entered by the Court Clerk on November 1, 2002. Currently before the court is Plaintiffs' Application for Default Judgment against Defendant.

## II. RELEVANT FACTUAL BACKGROUND [1]

PepsiCo is engaged in the manufacture and marking of beverage products throughout the United States and the world. Compl. ¶ 11. For quite some time, PepsiCo has adopted and made continuous use of the Pepsi, Diet Pepsi, and Mountain Dew trademarks on their own, or with designs in connection with the manufacture, sale, and advertising of soft drinks. Compl. ¶ 12. PepsiCo has also adopted and made continuous use of the trademark Aquafina, on its own or with designs, in connection with the manufacture, sale, and advertising of purified water. *Id.* Through its authorized licensees, PepsiCo sells a wide variety of novelty and promotional merchandise. Compl. ¶ 13.

PepsiCo is the owner of many federal trademark registrations issued by the United States Patent and Trademark Office for Pepsi, Diet Pepsi, Mountain Dew, and Aquafina. Compl. ¶ 14. PepsiCo, through its authorized bottlers and licensees, has sold many billions of dollars worth of beverages and merchandise under these trademarks throughout the world. Compl. ¶ 16. As a result of the extensive sales, promotional efforts, and advertising, the Pepsi, Diet Pepsi, Mountain Dew, and Aquafina trademarks have become famous; indeed, it is one of the most well-known and famous marks in the world. Compl. ¶ 17.

PepsiCo's products sold under the Pepsi, Diet Pepsi, Mountain Dew, and Aquafina trademarks are subject to a strict quality control program that protects all aspects of the beverages, including their ingredients, nutritional content, taste, aroma, appearance, and packaging. Compl. ¶ 18. PepsiCo and its authorized bottlers prohibit the sale of beverages with the Pepsi, Diet Pepsi, Mountain Dew, and Aquafina trademarks that do not comply with the quality control standards. Compl. ¶ 19.

Defendant allegedly began to advertise and sell PepsiCo's bottles and cans labeled with PepsiCo's trademarks and filled with liquids colored to look like PepsiCo's Pepsi, Diet Pepsi, Mountain Dew soft drinks and Aquafina water ("the counterfeit products"). Compl. ¶ 37, 41. In some cases, the liquids contained in the counterfeit products have a strong odor, contain floating solid matter, and have a foul taste. Compl. ¶ 38. The counterfeit products' labels contain information about PepsiCo, including its website address, street address, and a telephone number, but do not contain any reference to Defendant or that the counterfeit products are not legitimate PepsiCo products. Compl. ¶ 41. The counterfeit products' labels list ingredient and nutritional content information that

1. The following facts are assumed to be true for purposes of this motion only.

are completely inaccurate for their liquid contents. Compl. ¶ 42.

The counterfeit products contain a hidden interior compartment. The compartments in the bottles are created from the molding of two pieces of plastic that stop the liquids from entering the center of the bottle. Compl. ¶ 45. The compartment can be accessed by pulling the bottles apart. *Id.* When the compartments are created in the cans, sharp interior edges result, which cut people who use the cans. Compl. ¶ 52. These counterfeit bottles and cans are referred to as "stash" bottles or "stash" cans, and are often used to conceal illicit narcotics or weapons. Compl. ¶¶ 46, 52. Plaintiffs allege that there is a strong likelihood that consumers, either those who buy Defendant's counterfeit products themselves or those who encounter these products post-sale, will mistakenly believe that PepsiCo sells, or authorizes for sale, the counterfeit products. Compl. ¶¶ 48, 54.

On July 3, 2002, Plaintiffs filed the instant action, alleging that Defendant manufactured, advertised, promoted, and sold the counterfeit products without PepsiCo's consent or authorization. Defendant was personally served with the Complaint on July 13, 2002. Goldblatt Decl. ¶ 3; Ex. 1. Defendant contacted Plaintiffs' counsel after the Complaint was served, and he indicated an interest in settling the dispute. Jennings Decl. ¶ 2. On July 23, 2002, Defendant met with Plaintiffs' counsel at a storage locker for the purpose of complying with this Court's order granting an inspection and discovery. Jennings Decl. ¶ 3. During this meeting, Defendant signed the Stipulation and Order Re Preliminary Injunction that was entered by the court on August 2, 2002. Since this initial meeting, Plaintiffs have attempted to contact Defendant numerous times, but have received no response. Jennings Decl. ¶ 6; Goldblatt Decl. ¶ 5. On October 30, 2002,

Plaintiffs filed a Request for Default against Defendant, which was entered by the court clerk on November 1, 2002.

## III. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Fed.R.Civ.P. 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. *See Kloepping v. Fireman's Fund,* 1996 WL 75314, at *2 (N.D.Cal. Feb.13, 1996). In the Central District of California, motions for default judgment must set forth the following information: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Local Rule 55–1.

A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. *See Draper v. Coombs,* 792 F.2d 915, 924–25 (9th Cir. 1986). Rather, granting or denying relief is entirely within the court's discretion. *See id.* The Ninth Circuit has enumerated the following factors (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default judgment: (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986).

■ Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987). Thus, the plaintiff is required to provide proof of all damages sought in the complaint. This process is limited by Fed.R.Civ.P. 54(c), which states that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]."

## IV. DISCUSSION

### A. Procedural Requirements

In the instant case, Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Fed.R.Civ.P. 55(a), Local Rule 55–1, and Fed.R.Civ.P. 54(c). Pursuant to Fed.R.Civ.P. 55(a), the Court Clerk properly entered default against Defendant. As required by Local Rule 55–1, Plaintiffs provided proof in their Application for Default Judgment that: (1) default was entered against Defendant November 1, 2002; (2) Defendant failed to respond to the Complaint; (3) Defendant is neither an infant nor an incompetent person; (4) Defendant is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940; and (5) Defendant was served with notice of the application for default judgment on November 15, 2002. Finally, the motion complies with Fed.R.Civ.P. 54(c) in that it requests a remedy that is not different in kind from that prayed for in the Complaint. Thus, the court, in its discretion, may order a default judgment against Defendant based on the *Eitel* factors, outlined below.

### B. Eitel Factors

#### 1. Substantive Merits and Sufficiency of the Complaint

■ The first two *Eitel* factors are (1) the merits of Plaintiffs' substantive claim, and (2) the sufficiency of the complaint. *Eitel,* 782 F.2d at 1471–72. The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping,* 1996 WL 75314, at *2 (citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978)). In the instant action, Plaintiffs assert the following claims: (1) trademark counterfeiting in violation of 15 U.S.C. § 1114; (2) trademark infringement in violation of 15 U.S.C. § 1114 and common law; (3) false designation of origin in violation of 15 U.S.C. § 1125(a); (4) unfair competition in violation of Cal. Bus. & Prof.Code § 17200, *et seq.;* (5) dilution in violation of 15 U.S.C. § 1125(c); (6) dilution in violation of Cal. Bus. & Prof. Code § 14330; (7) false advertising in violation of 15 U.S.C. § 1125(a); and (8) false advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

To prevail on their trademark counterfeiting claim under 15 U.S.C. § 1114(1)(b), Plaintiffs must prove that Defendant reproduced, counterfeited, copied, or colorably imitated a registered mark and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive. 15 U.S.C. § 1114(1)(b) (1997).

To prevail on their trademark infringement claim under 15 U.S.C. § 1114(1)(a), Plaintiffs must prove that, without their consent, Defendant used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mis-

take, or deceive customers. 15 U.S.C. § 1114(a) (1997).

To prevail on their false designation of origin claim, Plaintiffs must prove that Defendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of his goods by Plaintiffs. 15 U.S.C. § 1125(a)(1)(A) (1997).

To prevail on their unfair competition claim under Cal. Bus. & Prof.Code § 17200, *et seq.*, Plaintiffs must prove that Defendant engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200 (West 2002).

To prevail on their dilution claim under 15 U.S.C. § 1125(c)(1), Plaintiffs must prove that it owns a famous mark, and that Defendant's commercial use of the mark "causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1) (1997).

To prevail on their dilution claim under Cal. Bus. & Prof.Code § 14330, Plaintiffs must prove a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark ..., notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Cal. Bus. & Prof.Code § 14330. As with the federal dilution statute, § 14330 protects only famous marks. *See Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 874 (9th Cir.1999).

To prevail on their false advertising claim under 15 U.S.C. § 1125(a), Plaintiffs must prove that Defendant used their mark in commercial advertising or pro-

motion to misrepresent the nature, characteristics, qualities, or geographic origin of his goods. 15 U.S.C. § 1125(a)(1)(B) (1997).

Finally, to prevail on their false advertising claim under Cal. Bus. & Prof.Code § 17500, *et seq.*, Plaintiffs must prove that Defendant made a "statement," in connection with the sale of personal property, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500 (West 2002).

In the instant action, Plaintiffs' Complaint properly alleges the elements for the above causes of action. The Complaint sets forth in detail the identity of Pepsi-Co's marks, the extent to which PepsiCo has used the marks, and the fame of the marks. *See* Compl. ¶¶ 14–20. The Complaint also alleges that Defendant used PepsiCo's marks in connection with the sale of the "stash" bottles and cans without PepsiCo's consent. Compl. ¶¶ 37, 41, 51, 54. The Complaint alleges that Defendant used PepsiCo's marks to create a false impression that Defendant was authorized by PepsiCo to use the marks on his products. *Id.* The Complaint alleges that Defendant's use of PepsiCo's marks is likely to cause confusion or mistake, or to deceive customers. Compl. ¶¶ 41, 54. The Complaint alleges that PepsiCo's reputation and goodwill has been damaged by the inferior quality of the counterfeit products and their association with illicit narcotics. Accordingly, Plaintiffs have adequately pled their claims against Defendant. Compl. ¶ 66, 70.

### 2. Amount at Stake

Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. In the instant case,

Plaintiffs are not seeking monetary damages. They seek only injunctive relief from the continued use of their trademarks on Defendant's counterfeit products. Accordingly, this factor favors granting default judgment.

### 3. Possibility of Prejudice

The fourth *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.

### 4. Possibility of Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See TeleVideo*, 826 F.2d at 917–18. Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Defendant was properly served with summons and complaint. Although Defendant did not respond to the Complaint, he contacted Plaintiffs' counsel to discuss settlement of the matter and signed the Stipulation and Order agreeing to the Preliminary Injunction entered by the court August 2, 2002. Subsequently, Plaintiffs have made numerous, albeit unsuccessful, attempts to contact Defendant to achieve a settlement of this matter. Given Defendant's early participation in the matter, the possibility of excusable neglect is remote.

### 6. Policy for Deciding on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the mere existence of Fed.R.Civ.P. 55(b) indicates that "this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314, at *3. Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed.R.Civ.P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 WL 75314, at *3. Accordingly, the court is not precluded from entering default judgment against Defendant.

### C. Relief Sought

■ Plaintiffs' demand for relief must be specific, pursuant to Fed.R.Civ.P. 8(a)(3). As discussed above, and further below, Plaintiffs seek only a permanent injunction barring Defendant's use of their trademark on counterfeit products. The relief sought is consistent with the relief requested in the Complaint.

Plaintiffs have requested a permanent injunction against Defendant's use of their trademarks on counterfeit products. The Lanham Act gives the court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). A plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims. *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1402 (9th Cir.1988) ("[T]he grant of injunctive relief is not a ministerial act flowing as a matter of course."). Plaintiffs provide no evidence that Defendant continues to sell goods bearing their trademarks. Howev-

er, in *Friends of the Earth, Inc., v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the Supreme Court stated that the standard for determining whether a case has been rendered moot by the defendant's voluntary conduct is stringent: " 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Id.* at 189, 120 S.Ct. 693 (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). Though it appears unlikely, given the lack of evidence submitted by Plaintiffs, that Defendant's allegedly wrongful conduct continued after Plaintiffs initiated this action or will continue in the future, in the absence of opposition by the non-appearing defendant, it cannot be said that it is "absolutely clear" that Defendant's allegedly wrongful behavior has ceased and will not begin again. Accordingly, the court GRANTS Plaintiffs' request for a permanent injunction enjoining Defendant from using Plaintiffs' trademarks on counterfeit products.

## V. CONCLUSION

Based on the foregoing, Plaintiffs' motion for default judgment and request for a permanent injunction are GRANTED.

IT IS HEREBY ORDERED that:

1. Defendant John Randall Cook, his officers, agents, servants, employees, and attorneys, their successors and assigns and all others in active concert or participation with him, are permanently enjoined and restrained from:

 a) manufacturing, advertising, promoting or selling products composed of modified PepsiCo, Inc. bottles, cans, or canisters bearing the PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks or any other marks owned by PepsiCo or its affiliated companies;

 b) using the PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks, any colorable imitations thereof, or any other marks which are likely to cause confusion with PepsiCo's business or its PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks in connection with the manufacture, sale, distribution, advertising, or promotion of any products or services;

 c) committing acts resulting in unfair competition with PepsiCo;

 d) diluting the distinctiveness of the famous PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks;

 e) tarnishing PepsiCo's business reputation or its PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks or products; and

 f) falsely advertising his products as emanating from or otherwise associated with PepsiCo.

2. Plaintiffs may destroy all labels, signs, prints, boxes, packages, advertisements, catalogs, cans, containers, bottles, and all promotional or other material given to Plaintiffs by Defendant bearing the PEPSI, DIET PEPSI, MOUNTAIN DEW, and AQUAFINA trademarks or any other trademarks confusingly similar thereto in accordance with 15 U.S.C. § 1118.

IT IS SO ORDERED.