LANDSTAR RANGER, INC., a Florida Corporation, Plaintiff,

v.

PARTH ENTERPRISES, INC., a California Corporation, USA Logistics, LLC, a New Jersey Limited Liability Company, and does 1 through 10, inclusive, Defendants.

Case No. CV 09–01426 MMM (AJWx).

United States District Court,
C.D. California.

July 19, 2010.

Gregg S. Garfinkel, Nemecek & Cole PC, Sherman Oaks, CA, for Plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

MARGARET M. MORROW, District Judge.

On February 27, 2009, plaintiff Landstar Ranger Inc., filed this breach of contract action against defendants Parth Enterprises, Inc., USA Logistics, LLC, and certain fictitious defendants, alleging breach of interstate transportation contracts.[1] The clerk entered the default of Parth Enterprises, Inc. on August 20, 2009.[2] Subse-

---

1. Complaint, Docket No. 1 (Feb. 27.2010). On March 16, 2009, plaintiff filed a first amended complaint. First Amended Complaint ("FAC"), Docket No. 4 (March 16, 2009).

2. Default by Clerk, Docket No. 17 (Aug. 17,

quently, the court dismissed plaintiff's claim against defendant USA Logistics, LLC without prejudice for lack of prosecution.[3] Plaintiff now seeks to have the court enter default judgment against Parth Enterprises, Inc. in the principal sum of $243,817.34 and to award prejudgment interest under California Civil Code § 3289.[4] Landstar also requests the opportunity to submit a bill of costs following entry of the default judgment.[5]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Landstar Ranger Inc., a Florida corporation with its principal place of business in Jacksonville, Florida,[6] is a federally licensed motor carrier engaged in the business of interstate carriage for hire.[7] Defendant Parth Enterprises Inc., a California corporation with its principal place of business in City of Industry, California,[8] contracted with Landstar to transport sixty shipments between September and November 2008.[9] Each shipment was prepared by USA Logistics; Landstar was the carrier of record and Parth was the shipper/consignor on each preprinted bill of lading contract.[10] Landstar picked up each shipment from Parth's City of Industry, California office and delivered it to Parth's office in Carnbury, New Jersey. It invoiced Parth a total of $313,803.60 for the sixty shipments.[11] Parth accepted each of Landstar's invoices and related documentation without objection or protest.[12]

Landstar received five wire transfer payments from USA Logistics for the shipments totaling $69,986.26.[13] Landstar contends that $243,817.34 remains due and owing for the deliveries to Parth.[14] It asserts that despite demand, Parth has failed to pay the remaining balance.[15] Landstar filed this action on February 27, 2009, and served Parth by personal service on the California Secretary of State on July 20, 2009,[16] as had been authorized by the court.[17] Landstar's motion for entry of default judgment is supported by the declaration of Gregg S. Garfinkel, who states that Parth is not an infant, incompetent

2009).

3. Order of Dismissal for Lack of Prosecution, Docket No. 33 (Feb. 9, 2010).

4. Application for Default Judgment ("Motion"), Docket No. 20 (Aug. 31, 2009), ¶ 5; Declaration of Gregg S. Garfinkel ("Garfinkel Decl."), ¶¶ 8–9.

5. Motion, ¶ 7.

6. First Amended Complaint, ¶ 1.

7. *Id.,* ¶ 2.

8. *Id.,* ¶ 5.

9. *Id.,* ¶ 11.

10. *Id.,* ¶¶ 12–14.

11. *Id.,* ¶ 15.

12. *Id.,* ¶ 17, Exh. A (listing open invoices to Parth and related freight documentation).

13. *Id.,* ¶ 18.

14. *Id.;* Garfinkel Decl., ¶ 5.

15. FAC, ¶ 19.

16. Proof of Service, Docket No. 12 (Aug. 6, 2009).

17. Order Granting Service of Summons and First Amended Complaint by Hand Delivery Upon California Secretary of State, Docket No. 6 (June 23, 2009). As support for its request that it be permitted to serve the California Secretary of State, Landstar submitted the declaration of Amy M. Lewis, who represented that Landstar had made numerous attempts to locate and serve Parth's designated agent for service of process without success. (Ex Parte Application for Order Granting Service of Summons and First Amended Complaint by Hand Delivery Upon California Secretary of State, Docket No. 5 (June 19, 2009).)

person, member of the military service, or otherwise exempt from default judgment under the Service Members Civil Relief Act, 50 App. U.S.C. § 521.[18]

## II. STANDARDS FOR ENTRY OF DEFAULT JUDGMENT

### A. Compliance with Rule 55 of the Federal Rules of Civil Procedure and Local Rule 55–1

Local Rule 55–1 requires that a party moving for default judgment submit a declaration (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Service Members Civil Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) affirming that notice has been served on the defaulting party, if required by Rule 55(b)(2).[19]

Plaintiff has complied with these requirements. Plaintiff's motion states that on August 20, 2009, the clerk entered Parth's default.[20] Plaintiff subsequently filed this motion for entry of default judgment against Parth.[21] Plaintiff asserts that Parth is not an infant, incompetent person, member of the military service or otherwise exempt from default judgment under the Service Members Civil Relief Act, 50 App. U.S.C. § 521.[22] Finally, as Parth has not appeared in the action,

plaintiff was not required to notify defendant of its intent to seek this default judgment.[23] The procedural prerequisites to entry of default judgment are thus satisfied. See, e.g., *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.Cal.2005) (finding that the procedural requirements of Rule 55 and Local Rule 55–1 were met where plaintiff submitted declarations addressing each required factor). Therefore, the court turns to the merits of plaintiff's motion.

### B. Legal Standard for Governing Default Judgment—the *Eitel* Factors

"Granting or denying a motion for default judgment is a matter within the court's discretion. *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03–6381 GAF (JTLx), 2004 WL 783123, *1 (C.D.Cal. Feb. 13, 2004); see also *Sony Music Entertainment Inc. v. Elias*, No. CV03–6387 DT (RCX), 2004 WL 141959, *3 (C.D.Cal. Jan. 20, 2004). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. See *Eitel v. McCool*, 782

---

**18.** Garfinkel Decl., ¶ 4.

**19.** Rule 55(b)(2) requires service on the defaulting party only if that party has appeared in the action. FED.R.CIV.PROC. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing"); see also, e.g., *In re Roxford Foods, Inc.*, 12 F.3d

875, 879 (9th Cir.1993) (noting that Rule 55(b)(2) notice "is only required where the party has made an appearance").

**20.** *Id.*, ¶ 6.

**21.** Docket No. 19.

**22.** Garfinkel Decl., ¶ 4.

**23.** *Id.*, ¶ 5.

F.2d 1470, 1471–72 (9th Cir.1986); see also *Elektra Entertainment Group*, 2004 WL 783123 at *1–2.

Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. See FED.R.CIV.PROC. 8(b)(6); see also, e.g., *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). The court, however, must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63 (1998) (footnote omitted); see also *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); *Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D.Cal.2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true ... this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. 10A Wright, Miller, & Kane, *supra*, § 2688, at 63; *Crawford*, 226 F.R.D. at 394 (district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment, quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).

## III. DISCUSSION

### A. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

■ The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *Pepsico, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002). Denying default judgment here would leave Landstar without a proper remedy. See *Pepsico*, 238 F.Supp.2d at 1177 (stating plaintiffs would have no other recourse for recovery if default judgment was not granted). Such a denial is unwarranted given that plaintiff has delivered sixty shipments to Parth, and has only received partial payment for its services. Since the facts in the complaint are deemed true, see *Geddes*, 559 F.2d at 560, the court concludes that plaintiff would suffer prejudice if a default judgment were not entered.

#### 2. Substantive Merits and Sufficiency of the Claim

The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings. These factors "require that a plaintiff state a claim on which [it] may recover." See *Pepsico*, 238 F.Supp.2d at 1175; see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978) (stating that the issue is whether the allegations in the complaint state a claim upon which plaintiff can recover).

■ The elements of a claim for breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant and (4) damage to plaintiff as a result of defendant's breach. See *Great American Insurance Co. v. MIVCO Packing Co., LLC*, No. 08–05454, 2009 WL 942390, *6 (N.D.Cal. April 6, 2009) (citing *Amelco Electric v. City of Thousand Oaks*, 27 Cal.4th 228, 115 Cal. Rptr.2d 900, 38 P.3d 1120 (Cal.2002)).

■ Landstar's complaint adequately alleges all elements of a claim for breach of contract. It asserts that Parth tendered sixty shipments of goods under bill of lading contracts for transportation in interstate commerce between September and November 2008.[24] It alleges that Landstar performed under the contracts by transporting each of the sixty shipments.[25] Landstar alleges that, although Parth accepted each delivery and the related invoices without objection or protest,[26] it breached the contracts by failing to pay $243,817.34 in shipping charges owed to Landstar.[27] Accepting these factual allegations as true, as the court must in deciding a motion for default judgment, plaintiff has pled and proved a claim for breach of the bill of lading contracts.

### 3. Amount at Stake

■ The third *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Pepsico,* 238 F.Supp.2d at 1176; see also *Eitel,* 782 F.2d at 1471–72. This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct. See *Walters v. Statewide Concrete Barrier, Inc.,* No. C 04–2559 JSW, 2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

Landstar seeks $243,817.34 due under the bill of lading contracts as well as prejudgment interest.[28] In support of its request, plaintiff proffers an invoice summary, copies of the invoices, and the underlying shipping documents, which reflect the outstanding balance.[29] The documents clearly indicate that Landstar made shipments on Parth's behalf from City of Industry, California to Cranbury, New Jersey, and that the shipments were received by Parth. The summary and the invoices clearly specify the charges and the outstanding balance due as of December 4, 2008. Landstar also proffers the declaration of Gregg S. Garfinkel, who states that total transportation charges still due and owing are $243,817.34.[30] Finally, Landstar proffers freight bills reflecting its shipping charges and a corresponding list of open invoices from Parth.[31] Based on the evidence presented, the court concludes that the damages Landstar seeks are consistent with the terms of the contracts and are otherwise appropriate. This factor therefore weighs in favor of entry of default judgment.

### 4. Possibility of Dispute

■ The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *Pepsico,* 238 F.Supp.2d at 1177; see also *Eitel,* 782 F.2d at 1471–72. There is no indication from Landstar or Parth that there are any facts in dispute. Plaintiff explains that Parth received invoices totaling $313,803.60 for the sixty shipments, and that it accepted these invoices and underlying paperwork without objection or protest.[32] Landstar has also sup-

---

**24.** FAC, ¶ 11.

**25.** *Id.,* ¶ 15.

**26.** *Id.,* ¶¶ 15, 17.

**27.** *Id.,* ¶¶ 18, 19.

**28.** *Id.,* ¶¶ 19, 22, 26.

**29.** *Id.,* Exh. A.

**30.** Garfinkel Decl., ¶ 8.

**31.** *Id.,* Exh. A.

**32.** FAC, ¶ 17.

plied the bill of lading contracts supporting its claims and acknowledged receipt of five wire transfers from USA Logistics in the amount of $69,986.26.[33] Parth has failed to appear in the action or to contest the material facts alleged in plaintiff's complaint. See *Pepsico,* 238 F.Supp.2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages," citing *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987)). Since Landstar has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.

### 5. Possibility of Excusable Neglect

■ The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect. See *Pepsico,* 238 F.Supp.2d at 1177; see also *Eitel,* 782 F.2d at 1471–72. Here, the possibility of excusable neglect is remote. Landstar demanded payment, yet Parth did not pay the remaining balance.[34] As authorized by the court, Landstar properly served Parth via personal service on the California Secretary of State.[35] Parth, however, failed to appear or defend. Despite the fact that the Secretary of State, rather than Parth's designated agent for service of process, received the summons and complaint, there is little chance that defendant's default was the result of excusable neglect given the numerous attempts Landstar made to locate Parth's agent. Parth, moreover, has made no effort to defend itself. See *Solis v. Vigilance, Inc.,* No. C 08–05083 JW, 2009 WL 2031767, *1–2 (N.D.Cal. July 9, 2009) (finding that the excusable neglect factor favored entry of default judgment where defendant did not appear, even though defendant was served through the California Secretary of State); *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 999, 1005 (N.D.Cal.2001) (default could not be attributed to excusable neglect where corporate entities had been properly served through the California Secretary of State). Consequently, this factor too favors entry of default judgment.

### 6. Policy for Deciding Cases on the Merits

■ "Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. The fact that Rule 55(b) has been enacted, however, indicates that "this preference, standing alone, is not dispositive." *Pepsico,* 238 F.Supp.2d at 1177 (quoting *Kloepping v. Fireman's Fund,* 1996 WL 75314 at *3 (N.D.Cal.1996)). Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend. See *Pepsico,* 238 F.Supp.2d at 1177 ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible"). Since defendant failed to respond to plaintiff's claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it.

### 7. Conclusion Regarding *Eitel* Factors

Aside from the policy of deciding cases on the merits, all of the *Eitel* factors weigh in favor of granting plaintiff's motion for entry of default judgment. As a result, the court concludes that it is appropriate to enter default judgment against Parth.

---

33. *Id.,* ¶ 18.

34. *Id.*

35. Garfinkel Decl., ¶ 3.

## B. The Character and Amount of Plaintiff's Recovery

Under Rule 8(a)(3), plaintiff's demand for relief must be specific, and it "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh*, No. CV 03–4043 GAF (PJWx), 2005 WL 5758392, *6 (C.D.Cal. Jan. 14, 2005); *Elektra Entertainment Group*, 2004 WL 783123 at *5. Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default." *Id.* at *5; see *Fong v. United States*, 300 F.2d 400, 413 (9th Cir.1962) (stating that a default judgment may not be different in kind from or exceed in amount that prayed for in the complaint); *Pepsico*, 238 F.Supp.2d at 1174 (stating that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]"). In its motion for default judgment, Landstar seeks $243,817.34 in unpaid freight charges plus pre-judgment interest under California Civil Code § 3289. It also seeks to submit a bill of costs following entry of the default judgment.

### 1. Damages Resulting from Claims Arising Under the Bill of Lading Contracts

■ Landstar seeks $243,817.34 in transportation charges that are currently due and owing.[36] As noted, Landstar has proffered an invoice summary, copies of its invoices, and the underlying shipping documents, which reflect the outstanding balance requested.[37] This evidence substantially supports Landstar's claim for $243,817.34 in damages related nonpayment for its shipping services.

### 2. Prejudgment Interest

■ Landstar also seeks prejudgment interest on the $243,817.34 owed under the bill of lading contracts. It asserts that because the balance was due as of December 4, 2008, "prejudgment interest should accrue from that date pursuant to California Civil Code section 3289."[38] Landstar did not allege entitlement to prejudgment interest in its first amended complaint, however. Because plaintiff did not pray for such damages in the complaint, and no meaningful notice of the possibility that such amounts would be awarded has been given, plaintiff cannot recover prejudgment interest. See FED.R.CIV.PROC. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *Silge v. Merz*, 510 F.3d 157, 160–61 (2d Cir.2007) (affirming the denial of prejudgment interest in connecting with a default judgment where plaintiff did not expressly pray for prejudgment interest in the complaint, and stating that, "[b]y limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c) ] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); see also *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, *4 (E.D.Cal. Mar. 4, 2009) ("Plaintiff did not in the complaint allege entitlement to punitive damages or pray for punitive damages. Therefore, it would be inappropriate for Plaintiff to recover punitive damages in the instant application because such damages are beyond the scope of the complaint, and thus no mean-

---

36. Motion, ¶ 5.

37. Garfinkel Decl., Appx. A.

38. *Id.*, ¶ 9. See CAL. CIV.CODE § 3289(b) ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach").

ingful notice has been given of a demand for punitive damages").[39] Accordingly, the court denies Landstar's request for pre-judgment interest.

### 3. Post–Judgment Interest

 "Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290 (9th Cir.1995) (citing *Perkins v. Standard Oil Co.,* 487 F.2d 672, 674 (9th Cir.1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorneys' fees, and costs. *Id.* at 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." 28 U.S.C. § 1961(a). For the calendar week preceding July 19, 2010, that rate was 0.28%.

## IV. CONCLUSION

For the reasons stated, plaintiff's motion for default judgment is granted. The court awards plaintiff $243,817.34 in damages based on the transportation charges. Plaintiff must submit its bill of costs within fourteen days of entry of this order.

### JUDGMENT FOR PLAINTIFF

On July 16, 2010, the court granted plaintiff's application for default judgment against Parth Enterprises, Inc. Accordingly,

IT IS ORDERED AND ADJUDGED.

1. That plaintiffs recover from defendants total damages of $243,817.34 for breach of contract. This sum shall bear post-judgment interest at the rate of 0.28 percent;

2. That the action be, and it hereby is, dismissed; and

3. That plaintiff recover its costs of suit herein.

---

**39.** Plaintiff's complaint does seek "such other and further relief as this Court may deem just and proper." (FAC, ¶ 19(3).) As noted by the Second Circuit, however, such boilerplate language is insufficient to put a defendant on notice of the specific damages sought as required by Rule 54(c). See *Silge,* 510 F.3d at 160 ("In reaching this result, we must reject Silge's argument that his demand for pre-judgment interest was implied by his generic request for 'such other and further relief which this Court deems just and proper.' It

has been observed that 'language ... seeking "such other and further relief as the court may deem proper" is mere boilerplate, meant to cover all bases as to the claims asserted in the complaint.' *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1277 n. 6 (9th Cir.2006). Whatever its import in other contexts, this formulaic language cannot substitute for the meaningful notice called for by Rule 54(c), which anticipates that defendants will look to the demand clause to understand their exposure in the event of default").